[No. 29487. Department Two. February 20, 1945.]

*In the Matter of the Estate of* WILLIAM E. GARRITY, *Deceased.*

ELEANOR M. GARRITY, *Appellant,* v. WILLIAM GARRITY, *as Executor, et al., Respondents.*[1]

[1]Reported in 156 P. (2d) 217.

*Richard R. Hodge* and *Scott, Langhorne & McGavick,* for appellant.

*Frederick S. Henricksen* and *Metzger, Blair & Gardner,* for respondents.

SIMPSON, J.—This case involved questions presented in a petition for letters of administration with the will annexed of the estate of William E. Garrity, deceased. The petition alleged that William E. Garrity died January 24, 1944, and left an estate consisting of community property subject to administration of a probable value of twenty-six thousand dollars; that the petitioner, Eleanor M. Garrity, was his widow; and that the other heirs were Richard Garrity, brother, William Garrity, father, and Lucille Garrity, mother.

It was further alleged that Mr. Garrity died testate, having executed his will October 11, 1943, which will had been admitted to probate January 28, 1944, and that William Garrity had been appointed executor thereof.

Petitioner prayed that she be appointed administratrix with the will annexed.

Answers filed by William Garrity, as executor, and William Garrity, Lucille Garrity, and Richard E. Garrity, as heirs, devisees, and legatees of William E. Garrity, admitted portions of the allegations contained in the petition and

then alleged that the estate consisted of the separate property of William E. Garrity.

It was further alleged that the property became separate property by virtue of the provisions of a property settlement agreement, dated September 2, 1943, made and entered into by William E. Garrity and his wife, Eleanor M. Garrity. The agreement provided that all of the property then owned by Mr. and Mrs. Garrity should be divided between them. Thereafter the property was actually divided by the making and delivery of written instruments conveying the title and possession to the community property. Eleanor M. Garrity received and retained all the property awarded to her and was estopped from asserting or claiming that the property left by decedent was community.

Demurrers to the answers were presented to the court and by it overruled. A reply put in issue the allegations contained in the answers.

The case was tried to the court, and an oral decision was rendered in favor of the answering parties. A motion for judgment notwithstanding the oral decision of the court or, in the alternative, for a new trial was presented. The basis of the motion was that there was no evidence or reasonable inference from the evidence to justify the decision and that the same was contrary to law. The court denied the motion. Findings of fact and conclusions of law were made. Thereafter judgment was entered, dismissing the petition of Eleanor M. Garrity. Petitioner has appealed.

Her assignments of error are: In overruling appellant's demurrers to the answers of respondents; in holding that the property disclosed by the inventory was the separate property of the deceased; in dismissing with prejudice the petition of appellant; and in denying appellant's motion for judgment notwithstanding the oral decision of the court or in the alternative for a new trial.

The undisputed facts are as follows: William E. Garrity and Eleanor M. Garrity were married June 29, 1941. During their married life they accumulated a considerable amount of community property. The community property was acquired from the Northern Pacific Railway Company

in the sum of $27,500, paid to William E. Garrity because of severe injuries he received while working for the company October 14, 1941. As a result of those injuries, Mr. Garrity suffered a complete paralysis from his waist down, and three fingers were amputated from the left hand. The paralytic condition continued until his death.

Sometime in the year 1943, the parties decided they could no longer live together as husband and wife and September 2, of that year, entered into a property settlement agreement. The property disposed of by the agreement consisted of their home in Tacoma, Washington, some household goods, an automobile, and twenty thousand dollars in United States war savings bonds. The agreement, in writing and properly acknowledged, is as follows:

"IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON FOR PIERCE COUNTY

"ELEANOR M. GARRITY,
                    Plaintiff,              No. 89926
            v.                     PROPERTY SETTLEMENT
"WM. E. GARRITY,                        AGREEMENT
                    Defendant.

"THIS AGREEMENT made and entered into this 2nd. day of September, 1943 by and between Eleanor M. Garrity, hereinafter referred to as First Party and William E. Garrity, hereinafter referred to as Second Party,

"WITNESSETH:

"THAT WHEREAS, the parties hereto now are husband and wife, but have separated and are now living separate and apart, and whereas, the party of the first part has commenced an action for divorce against the party of the second part, asking to have the bonds of matrimony now existing by and between the parties hereto dissolved; and, whereas, the parties hereto have accumulated some community property during their married life; and whereas all of the property of the parties hereto is at present community property, save and except the personal effects of each of the parties hereto; and whereas, both of the parties hereto, desiring to remain friendly towards one another and wishing to amicably adjust their property rights so that in the event that a divorce is granted plaintiff in the above entitled action, that the Court shall be saved the embarrassment of having to adjudicate the property rights of the parties;

"Now, THEREFORE, THIS AGREEMENT WITNESSETH:

"That First Party herein, in the event, that a decree of divorce is granted, will present to the court for its approval, the following agreement:

"The party of the first part shall receive all of her personal effects and belongings, bed-room set, the lamps, and bedding for the bed, all of which are located in her bed-room in the home of the parties.

"Party of the first part shall also receive the automobile of the parties, together with cash and U. S. Savings Bonds (the bonds being accepted at the face value thereof at the time of their purchase) totalling $5,000.00, together with the silver-ware and china-ware.

"Party of the second part shall receive all of the remaining property of the parties hereto, including the home of the parties, located at 1402 So. 56th St., Tacoma, Wash., the remaining U. S. Savings Bonds and cash, the remaining household furniture and furnishings.

"In the event of the granting of a divorce in the above entitled action, this property settlement shall be a full and complete settlement of all property of the parties hereto and the property received by first party hereunder shall thereupon become her separate property, free and clear of any claims whatsoever on the part of the second party, and the property received by party of the second part shall thereupon become his separate property, free and clear of any claims whatsoever on the part of first party. It is further agreed between the parties hereto that this property settlement shall be final and conclusive between the parties hereto regardless of whether or not either party hereto may die before the Interlocutory Decree of Divorce shall become final.

"It is further agreed between the parties hereto that no claim whatsoever shall be made by first party on the second party for any alimony or financial support whatsoever. First party agrees that she will pay all costs in connection with the above entitled divorce proceeding, including attorney fees, and that the party of the second part herein shall be relieved from payment thereof.

"Party of the first part hereby expressly disclaims any interest whatsoever in the life insurance policies issued on the life of the party of the second part, or any claim on the proceeds thereof either on account of payment of the premiums thereon from community funds or otherwise.

"It is further understood and agreed by and between the parties hereto that from this date forward, all income re-

ceived by either party hereto, shall be construed to be separate property of the party receiving the same, free and clear of any claim whatsoever of the other party.

"Each of the parties hereto hereby agree that they will execute the necessary instruments of transfer in order to put this property agreement into full force and effect, when requested so to do by Attorney Fred S. Henricksen.

"This agreement shall be binding on each of the parties hereto, their heirs and assigns forever.

"IN WITNESS WHEREOF the parties have hereunto set their hands this 2nd. day of September, 1943.

"ELEANOR M. GARRITY
Party of the First Part.
"WILLIAM E. GARRITY
Party of the Second Part."

September 3, 1943, Mrs. Garrity made, executed, and delivered to her husband a bill of sale of certain personal property in the home and, on the 4th of September, 1944, conveyed to him by quitclaim deed her interest in the real property.

September 6, 1944, Mr. Garrity gave to his wife a bill of sale of the personal property allotted to her by the settlement agreement. The deed contained a clause which is as follows:

"The object of this deed is to divest the grantor herein of any and all interest in and to the above described premises, either community or otherwise, and to vest title to said premises in the grantee herein as his separate property, free and clear of any claims whatsoever on the part of the grantor herein."

Each of the bills of sale contained a similar clause.

September 4, 1943, Mrs. Garrity filed her action for divorce and on October 8, 1943, was granted an interlocutory order of divorce. In the decree it was stated that the property settlement entered into on the second day of September, 1943, was approved in all respects.

Mr. Garrity died testate in Tacoma, Washington, January 24, 1944, and his will was admitted to probate in Pierce county January 28, 1944. The appointment of William Garrity, named in the will as executor, was confirmed by

the court. The executor qualified and proceeded to probate the estate.

The appraised value of the property was $19,950. By the terms of the will, a wheel chair and hospital bed were given to the Northern Pacific Hospital Benefit Association. Five thousand dollars was left to a brother, and the balance of the property was left to decedent's father and mother.

Appellant argues that all of the property left by the deceased was community property, her reason being that the property settlement was made in contemplation· of a divorce, became merged in the interlocutory order confirming the settlement, and therefore became null and void on the death of Mr. Garrity.

On the other hand, respondents take the stand that the parties to the agreement actually divided the property between them in accordance with the provisions of the property settlement agreement, that each took possession of his or her portion thereof and thereafter held it as his or her separate property.

Rem. Rev. Stat., § 10572 [P. C. § 1143], provides in part:

"A husband may give, grant, sell, or convey directly to his wife, and a wife may give, grant, sell, or convey directly to her husband his or her community right, title, interest, or estate in all or any portion of their community real property. And every deed made from husband to wife, or from wife to husband, shall operate to divest the real estate therein recited from any or every claim or demand as community property."

Conveyances made under provisions of the above section have been approved by this court on numerous occasions. It is the law of this state that an interlocutory order of divorce abates and becomes a nullity for all purposes upon the death of one of the parties occurring prior to the entry of a final decree. *McPherson v. McPherson,* 200 Wash. 365, 93 P. (2d) 428; *State ex rel. Atkins v. Superior Court,* 1 Wn. (2d) 677, 97 P. (2d) 139.

In deciding this case, we must necessarily ascertain the intention of the parties at the time they entered into the property settlement agreement. If it was their intention to

make a settlement which would be effective regardless of any action the court might take in the divorce case, then the property secured by each became and remains separate property. If, on the other hand, the division of the property was to be subject to approval or change by the court in the divorce proceedings, then the property would not become separate for the reason that the death of Mr. Garrity abated the whole controversy.

Another question to be answered is whether or not the property became separate and vested in the respective parties at the times the deed and bills of sale were executed and delivered. If the title was so vested, then the property became separate and remained in that condition.

In ascertaining the intention of parties to a written agreement, we must look to the wording of the instrument itself as made by the parties, view it as a whole, and consider all of the circumstances surrounding the transaction, including the subject matter together with the subsequent acts of the parties to the instrument. Courts will give to words in a contract the ordinary or common meaning. A liberal construction will be given to contracts in order that they may be given effect and to carry out the intention reflected therein. *State ex rel. Seattle v. Seattle Elec. Co.,* 71 Wash. 213, 128 Pac. 220, 43 L. R. A. (N.S.) 172; *Kanaskat Lbr. etc. Co. v. Cascade Timber Co.,* 80 Wash. 561, 142 Pac. 15; *Puget Sound International R. v. Everett,* 103 Wash. 495, 175 Pac. 40; *Thomle v. Soundview Pulp Co.,* 181 Wash. 1, 42 P. (2d) 19; *Peabody v. Star Sand Co.,* 186 Wash. 91, 56 P. (2d) 1018; *Bellingham etc. v. Bellingham Coal Mines,* 13 Wn. (2d) 370, 125 P. (2d) 668.

Based upon this well-established rule, we examine the property settlement agreement and the subsequent acts of the parties to that contract in order to ascertain what Mr. and Mrs. Garrity intended to do with their community property. It is quite apparent that they had definite ideas concerning the division they desired to make of the property, otherwise they would have submitted the whole matter to the court. It is also evident that they were to present the division agreement to the court. However, it is equally

clear that the parties were determined to adhere to the settlement agreement regardless of the action of the trial court. This conclusion is unescapable when we consider the following provision contained in the contract:

"It is further agreed between the parties hereto that this property settlement shall be final and conclusive between the parties hereto regardless of whether or not either party hereto may die before the Interlocutory Decree of Divorce shall become final."

This portion of the agreement was evidently incorporated because of the fact that Mr. Garrity was a confirmed invalid and had been such since his severe injury in October, 1941. The parties were certainly justified in believing that Mr. Garrity could not live very long. It was this belief that impelled them to make sure and certain that the division of the property should stand and that each should retain as separate property that portion he or she had secured. Another compelling conclusion results from the statement in the contract which says: "This agreement shall be binding on each of the parties hereto, their heirs and assigns forever."

Added to the force of the definite statements contained in the written instrument are the actions of Mr. and Mrs. Garrity which occurred immediately after the agreement was executed. Their actions consisted in the execution and delivery of the deed and bills of sale and the inclusion in those instruments of the clause which we have set out in this opinion. Rarely does one find in a written instrument such definite clauses indicating the intent of the signers.

As already indicated, Mrs. Garrity gave to her husband a deed to the community real estate and the bill of sale to certain of the personal property, and he gave to her the bill of sale of another portion of the community property. These instruments disposed of all the property owned by the parties. It is clear to us that the property would have retained its separate character had Mr. Garrity died prior to the trial of the divorce case. We hold that the delivery of the deed and bills of sale established in the ones receiv-

ing those instruments a vested interest in the property conveyed.

Both sides to this controversy have relied upon *In re Martin's Estate,* 127 Wash. 44, 219 Pac. 838. The reading of that case demonstrates the fact that it is most helpful in arriving at a decision of the case at bar.

The Martins were married in 1906 and lived together until March, 1920. At the time of the separation they divided their property, and mutual deeds were executed and exchanged to evidence the division. In August, 1921, the husband instituted an action for divorce and a decree was granted him. The court "found that all property rights of the parties had been equitably and justly settled by mutual agreement." Plaintiff died before a final decree was entered. This court decided that the separation agreement was a final disposition of the property rights of the parties and that the property in the possession of the plaintiff at the time of his death was his separate property.

Appellant argues that the case is not in point for the reason that there was no written agreement in connection with the property, but that deeds were exchanged to the real property and each party took possession and that they made a presently effective division of their property in contemplation of separation and not of divorce. The fact remains, however, that in the cited case, as here, the parties submitted the settlement agreement to the court and it was acted upon by the court. The case governs the one under consideration.

Counsel for appellant in their well-prepared brief have called our attention to many cases which they earnestly contend govern the disposition of this one. The principal cases cited are: *Bullock v. Bullock,* 131 Wash. 339, 230 Pac. 130; *Fleming v. Yoke,* 53 Fed. Supp. 552; *Warren v. Warren,* 116 Minn. 458, 133 N. W. 1009; *Douglas v. Willcuts,* 296 U. S. 1, 80 L. Ed. 3, 56 S. Ct. 59, 101 A. L. R. 391.

These cases lay down the rule that where parties make a property settlement agreement and the settlement is acted upon by the trial court, the rights of the parties rest upon the decree and not upon the agreement.

In the *Bullock* case, an attack was made upon a settlement after it had been approved by the court in a divorce action. We properly held that the plaintiff's attack was collateral and could not be considered.

The other cases announce rules which have no application here because of factual difference and for the further reason that they are contrary to our decision in the *Martin* case.

The judgment is affirmed.

BEALS, C. J., BLAKE, and ROBINSON, JJ., concur.

MALLERY, J. (concurring)—The spouses knew that they had the statutory right to divide their community property between themselves. They did this by appropriate conveyances and delivery of the property. Nothing remained to be done to make the division effective and to vest it as separate property in themselves.

They contemplated a divorce, but they knew that the court, having power to distribute the property whether community or separate, would not be bound by their conveyances, so they sought a judicial division identical with their own. They had succeeded in this up to the point where an interlocutory decree had been entered in accordance therewith. The death of one of the parties prior to final decree wiped out the divorce proceeding *in toto*, including any intent the parties had with regard to it. Had there been no disposition of the property other than that dependent upon and inherent in the interlocutory decree, the community status of the property would not have been changed. With the abatement of the action, the interlocutory decree did not and could not affect the prior status of the property and, it having become separate property by their private conveyances, it remained so. There is nothing in the divorce proceedings to indicate that the parties, at the time of making the conveyances, did not intend, so far as lay within their power to make a final disposition of the property.