OPINION OF THE COURT
John B. Riordan, S.
A wise title company lawyer recently said that “death may be final, but divorce goes on for eternity” (Bagwell, Tenancy in the Entirety, NYLJ, Sept. 12, 2001, at 5, col 2). While Michael Pavese has gone to his final resting place before his divorce action was completed, he more than anyone might appreciate the irony that his death has not ended the problems of his marriage but eternally exacerbated them. Michael Pavese was a retired attorney who had worked many years as an editor of matrimonial law publications for West Publishing and was a contributor to the Law Revision Commission.
The issue now before this court is whether or not the stipulations or agreements he entered into with his spouse, Barbara Pavese, during their divorce action are valid and enforceable or did they “die” with Michael Pavese? Specifically, Barbara Pavese has petitioned for a determination that the stipulations or agreements made in the divorce action be declared void and *3 ineffective and that they be vacated, that all the funds held in certain United States Treasury accounts be released immediately to her as a joint tenant with right of survivorship or, alternatively, that at least half these funds be released to her immediately.
Factual Background
Barbara and Michael Pavese were married on April 5, 1981. On or about May 31, 2001 Michael Pavese moved out of the then marital home in Lloyd Harbor, Suffolk County, New York. He took up residence with Peter Pavese, his brother, in Massapequa, Nassau County, New York.
By a summons and complaint dated June 1, 2001, Michael Pavese commenced an action for divorce against Barbara Pavese. The action was assigned to the Honorable Justice Donald Blydenburgh, Supreme Court, Suffolk County, New York. In that action, the parties executed and entered into three stipulations dated June 18, 2001, August 2, 2001 and August 7, 2001. At the time of the separation on May 31, 2001, Michael and Barbara Pavese had over $10,000,000 in a United States Treasury direct account invested in various United States Treasury bills. The ownership of the account was denominated “Michael Pavese and Barbara Pavese with Right of Survivorship.” On June 18, 2001 in a written stipulation so ordered by Justice Blydenburgh, the parties agreed, inter alia, that $1,500,000 of their marital assets should be released to each of them, not to be subject to the claim of the other and representing a partial distribution of the marital assets. On August 2, 2001, Justice Blydenburgh so ordered another stipulation which again, inter alia, provided for the distribution of another $1,000,000 of the marital assets to each of the parties after payment to Michael Pavese of certain sums for his half share of the marital residence. In a further stipulation of settlement, acknowledged by the parties on August 7, 2001 and so ordered by the court on August 8, 2001, the parties agreed again, inter alia, to a further distribution of marital assets from the Treasury direct account of the sums of $1,750,000 to each immediately.
On August 12, 2001 Michael Pavese passed away. He was then residing with his brother, Peter Pavese, who thereafter offered his will for probate in this court. The petitioner herein, Barbara Pavese, has filed objections to the offered will and discovery has commenced in the probate proceeding moving toward a trial. In the interim, preliminary letters testamentary were issued to Peter Pavese on November 30, 2001.
*4 From the account statements attached as exhibit A to this petition, the August 3, 2001 balance was $8,570,000 and pursuant to the September 9, 2001 statement, $3,000,000 was redeemed on August 31, 2001 leaving a balance of $5,570,000. It appears, however, that none of the funds have been distributed to decedent, his estate representatives, or Barbara Pavese except for some earned interest. Pursuant to the orders of this court, that account remains under restraint until the validity of the stipulations in the divorce action are determined in order to protect the estate’s claim, if any, to these funds.
Procedural History of the Case
Following his death, an order to show cause was brought in this court by Peter Pavese, as the designated executor in Michael Pavese’s offered will and as coresiduary beneficiary. He was joined by his sister, Catherine Diana, the other coresiduary beneficiary. The order sought to restrain Barbara Pavese and her agents from disposing of any assets in her name, the name of Michael Pavese, or in their joint names. In a decision dated November 9, 2001, this court continued the temporary restraining order issued with the signing of that order to show cause on September 25, 2001 until the determination of that application for a preliminary injunction. Basically, the temporary restraining order has prevented Barbara Pavese from asserting any control over the treasury bond account, and from selling the house in Lloyd Harbor or the decedent’s Jaguar unless the funds were placed in escrow. While the order to show cause was pending, Barbara Pavese moved before Justice Blydenburgh for an order vacating all the stipulations in the divorce action on the grounds that the action had abated due to Michael Pavese’s death. This court found that the application for a preliminary injunction against these assets was premature, until the Supreme Court determined the validity of the stipulations entered in that court and so ordered by it. On December 31, 2001, the Supreme Court, considering this court’s decision, denied defendant Barbara Pavese’s motion on the grounds that the divorce action and all ancillary actions abate as the marital relationship no longer existed. The court found that determination of the validity of the stipulations was ancillary to the divorce action and the court could not make such an adjudication. The Supreme Court stated that the proper procedure for the defendant, Barbara Pavese, was to institute a plenary action to vacate the stipulations in that court or the Surrogate’s Court. Thereafter, in denying an ex parte order to *5 show cause by Barbara Pavese made in the pending probate proceeding, this court agreed with the Supreme Court that the relief she sought had to be made by the institution of a plenary action in the Supreme Court or by institution of a separate proceeding in this court. She has evidently chosen to bring this proceeding supported by her verified petition for the relief she now seeks.
This Court’s Jurisdiction
The estate has argued that Barbara Pavese cannot seek to set aside these stipulations by a mere application on motion because there is binding authority that a party cannot proceed to set aside a separation agreement except by commencing a plenary action (Deppe v Deppe, 287 AD2d 480). The estate asserts that the institution of a plenary action requires not only a plaintiff/petitioner but also a defendant/respondent to be named in the caption, that a plenary action may not be commenced by an order to show cause and that a complaint/petition must state a cause of action containing factual and legal grounds on which she seeks to have this court vacate three signed, notarized, and acknowledged contractual agreements. The estate submits that the defective caption and petition violates the CPLR and the State and Federal Constitutions because it fails to give due notice and an opportunity to be heard to any named defendant/respondent, and fails to set forth any factual and legal basis for the Surrogate’s Court to vacate these contractual agreements.
All litigation in the Surrogate’s Court takes place in the form of a special proceeding (SCPA 203). Where a procedure is not provided for in the Surrogate’s Court Procedure Act, the CPLR applies (SCPA 102). While the SCPA does not specifically authorize the bringing on of a proceeding by an order to show cause instead of by a citation (SCPA 306), CPLR 403 (d) provides the authority to do so (Matter of Osorio v Leventhal, 80 NY2d 898; Siegel and Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 308, at 320 [1994 ed]; Tur ano and Radigan, New York Estate Administration § 2.04 [2002 ed]; 1 Warren’s Heaton, Surrogates’ Courts § 2.08 [2]; see, Surrogate’s Court Act § 48; see also, SCPA 313). Personal jurisdiction over the parties is obtained by service of process upon them (SCPA 203). “Process” under the SCPA includes an order to show cause as well as a citation (SCPA 103 [43]), so it is patent that a proceeding in this court may be commenced by an order to show cause (cf., Matter of Rosenhain, 151 AD2d 835).
*6 Since this court exercises its jurisdiction by the commencement of a special proceeding and proceedings are commenced by the filing of a petition (SCPA 103 [40-a]), a special proceeding is a plenary action, just as an action itself and therefore one of two vehicles by which civil relief may be granted in the State of New York (1 Warren’s Heaton, supra, § 2.09). Accordingly, the commencement of a special proceeding by order to show cause in this court is equivalent to the institution of a plenary action by summons and complaint in the Supreme Court. Indeed, this court’s rejection of the order to show cause submitted without a petition in its decision of January 10, 2002 was based upon this very concept.
The claim by the estate that the caption of this proceeding violates the CPLR and the State and Federal Constitutions for failure to give due notice to a named respondent is also rejected. SCPA 304 states that a petition must substantially set forth the title of the proceeding, the name and domicile of the person to whose estate the proceeding relates, and the petitioner (SCPA 304 [1]). SCPA 304 also requires that the petition, not the caption or title, contain the facts upon which jurisdiction depends and the persons interested upon whom service of process is required (SCPA 304 [2], [3], [4]). Commentators have indicated that the title or caption of the proceeding is satisfactory if it describes the type of proceeding and includes the name of the estate and the petitioner (1 Warren’s Heaton, Surrogates’ Courts § 5.02 [3]; Tur ano and Radigan, New York Estate Administration § 2.10 [a] [2002 ed]), so that where a petition does not clearly describe the nature of the proceeding in the caption, it can be dismissed (see, Matter of Moody, NYLJ, Nov. 21, 1997, at 33, col 4 [Sur Ct, Queens County]). But, in contrast to CPLR 2101 (c), pursuant to which a summons, a complaint, or a judgment caption or title must include the names of all parties, SCPA 304 does not require the naming of each respondent in the title or caption. Where each necessary party or person interested is named in the contents of the petition, SCPA 304 has been complied with. Where each of the persons interested have been served with process (here the order to show cause and petition), the constitutional requirements of due notice have been met. In this instance, the order to show cause and petition properly describe the nature of the proceeding, the decedent’s estate, and the petitioner. Furthermore, the petition and order to show cause give the fiduciary as respondent due and constitutionally adequate notice of the relief sought (SCPA 304 [5]).
*7 With respect to this court’s subject matter jurisdiction, the law is clear that if a matter relates to the affairs of a decedent or the administration of an estate, the Surrogate’s Court has jurisdiction (NY Const, art VI, § 12 [d]; Matter of Piccione, 57 NY2d 278). Furthermore, the proceedings enumerated in the SCPA are not exclusive, and a proceeding not specifically provided for in the SCPA can be commenced where the court has subject matter jurisdiction (SCPA 202). The Surrogate’s Court can exercise the same powers the Supreme Court has with respect to matters within its subject matter jurisdiction (SCPA 209 [10]). It is also well settled that the question of interpretation and enforcement of a marital agreement as it affects a decedent’s estate is clearly within the subject matter of the Surrogate’s Court (Matter of Garofalo, 141 AD2d 899). In the instant matter, the surviving spouse seeks merely a legal determination that the marital agreements are unenforceable because of the abatement of the divorce action. This is not a request to vacate a prior order of the Supreme Court (CPLR 5015 [a]). Nor is this an action to vacate the separation agreements or stipulations on the grounds of fraud, duress, overreaching, or unconscionability. No such factual allegations are made in this proceeding. Neither can this proceeding be classified as an impermissible appeal of the orders of the Supreme Court. Can there be any doubt that if the executor had commenced a discovery proceeding against the spouse for the enforcement of these agreements and return of these assets if she had received them as a joint tenant or tenant by the entirety, that this court would have subject matter jurisdiction over such a matter as relating to the affairs of the decedent? In a case cited by the estate, in its surreply affirmation, the First Department upheld the enforcement of a separation agreement and directed a surviving ex-wife to turn over pension plan benefits to the estate in a discovery proceeding brought under SCPA 2103 in the Surrogate’s Court (Matter of Hayman--Chaffey, 267 AD2d 142, lv denied 94 NY2d 932). This proceeding by the spouse asking the court to declare the agreements void and ineffective as abated and to direct that all the funds held in United States Treasury bills be released to her as a joint tenant with right of survivorship is simply in the nature of a reverse discovery proceeding authorized by SCPA 2105 (Matter of Mittleman, 35 Misc 2d 848). Consequently, this court has subject matter jurisdiction of these issues that clearly relate to the decedent’s affairs (SCPA 202).
*8 The Agreements
The parties have referred to the agreements as “stipulations,” “interim stipulations,” “settlement agreements,” “separation agreements,” “opting out agreements” (Domestic Relations Law § 236 [B] [3]) and even a “separation decree.” Some of this nomenclature appears to be an effort to classify the agreements into a perceived pigeonhole that will make them enforceable or not for either party’s benefit. The agreements are attached to the petition as exhibits A, B, and C, respectively. They speak for themselves.
Generally, public policy favors agreements between the parties in a marriage or contemplated marriage (Galusha v Galusha, 116 NY 635). Except for General Obligations Law § 5-311, which prohibits parties from contracting to alter or dissolve a marriage or to relieve either of the obligation to support the other, leaving the other destitute, parties may freely agree before marriage, after marriage, after separation or during a divorce action on the manner in which the obligations of the marital relationship are to be carried out. These agreements are encouraged by the courts in order to allow the parties to resolve their disputes by themselves without the need for painful and costly litigation which may be harmful to themselves and often to their children. Separation agreements, antenuptial agreements, or other marital agreements have been given an additional sanction by the Equitable Distribution Law (Domestic Relations Law § 236 [B]). These agreements executed with appropriate formality may “opt out” of the Equitable Distribution Law and will be enforced in any ensuing matrimonial action. Pursuant to the statute such agreements may, among other things, provide for testamentary provision and ownership, division and distribution of property (Domestic Relations Law § 236 [B] [3] [1], [2]). A validly executed separation agreement may lay the groundwork for a conversion divorce (see, Domestic Relations Law § 170 [6]). Domestic Relations Law § 236 (B) (3) states “[a]n agreement by the parties, made before or during the marriage shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded.” While the statute could be construed as allowing a noncomplying agreement to be enforceable in other than a matrimonial action, such as in a Surrogate’s Court proceeding postdeath, the more persuasive construction is that such agreements are valid and enforceable in any subsequent litigation in which *9 they are germane (Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C236B:12). The Surrogates’ Courts have frequently determined the enforceability of such agreements (see, e.g., Matter of Riconda, 90 NY2d 733; Matter of Maruccia, 54 NY2d 196) . The cases have discussed the governing principles involved as the same whether the agreements were classified as antenuptial, separation, or other interspousal agreements (see, also, EPTL 5-1.1-A [e] [2]).
Petitioner argues that two of the agreements (exhibits A, B, June 18, 2001, Aug. 2, 2001) are not properly acknowledged and none of the agreements provide or even mention that the parties live separate and apart. Furthermore, it is pointed out by petitioner that in order to obtain a decree of separation, an action for a separation must be commenced (Domestic Relations Law § 200). Therefore, it is asserted, all of respondent’s arguments and case law concerning separation agreements are irrelevant.
While the agreements so ordered by the court are not a separation decree (Domestic Relations Law § 200), the requirement that the parties live separate and apart is only required for a conversion divorce under Domestic Relations Law § 170 (6) and not to the enforcement of the agreements under Domestic Relations Law § 236 (B) (3). There appears to be no dispute that the August 7, 2001 interspousal agreement is a properly acknowledged agreement, so that case law regarding separation agreements is certainly relevant to enforcement of that agreement. In the final analysis, whatever label is given to these agreements, case law dictates that agreements made in contemplation of marriage, during marriage, in contemplation of separation, after separation, or during a divorce action are to be treated equally in terms of the enforceability of provisions which affect the property rights of a deceased spouse’s estate (Freed, Brandes and Weidman, Agreements to Divorce, NYLJ, Sept. 25, 1990, at 3, col 1).
Abatement
There is no doubt that when a decedent who is a party to a divorce action dies prior to entry of a final judgment of divorce, the action abates because the marital relationship no longer exists (Matter of Forgione, 237 AD2d 438; Forgione v Forgione, 231 AD2d 603; Matter of Alfieri, 203 AD2d 562; Sperber v Schwartz, 139 AD2d 640; Briggs v Briggs, 181 Misc 2d 197) . Generally, the concept that the divorce action abates af *10 fects ancillary relief which could be or was sought in the divorce action. For example, in Sperber v Schwartz (supra), the husband’s death was held to have extinguished any right to equitable distribution. In Forgione v Forgione (supra), the trial court had entered a pendente lite order during the divorce action requiring the husband to designate the wife as the beneficiary of his life insurance which was designed to secure payment of a pendente lite order of maintenance. The court held that upon the death of the husband prior to judgment of divorce, all ancillary claims, such as the plaintiff wife’s claim for permanent maintenance, abated so that the pendente lite order to secure maintenance could not be continued and enforced. In Matter of Alfieri (supra), the decedent husband had violated a pendente lite order which prohibited him from transferring his bank accounts and/or changing the beneficiaries on certain trust accounts. Apparently, he had done so without regard to the court order making his sister the beneficiary upon death. When the wife commenced a discovery proceeding (SCPA 2103) in the Surrogate’s Court demanding a return of these assets to the estate, the Surrogate, finding that the divorce action abated, held that the estate could not obtain enforcement of a pendente lite order made in equitable distribution after death, which holding was affirmed on appeal. On the constraint of these cases, the Supreme Court in Pavese v Pavese, the divorce action, declined to determine the enforceability of these stipulations or agreements because to do so would be to grant ancillary relief in the abated divorce action.
This does not mean, however, that where an agreement is made intending to serve as an “opting out” agreement in the event of divorce (see, Domestic Relations Law § 336 [B] [3]), any right decedent had to enforce it abated upon his death (Brower v Brower, 226 AD2d 92, 95). As the Appellate Division, Third Department, stated in Brower v Brower (supra at 95), where it is clear from the agreement that the parties intended the agreement to be an independent contract to be performed regardless of whether the parties ever actually terminated their marriage, the decedent’s estate has a right to enforce that agreement. The Court in Brower took great care to distinguish the apparently contrary opinion of the majority in Passmore v King (186 AD2d 241, lv dismissed 81 NY2d 1007). The Brower Court stated (at 95) “[wjithout expressing any opinion concerning the legal principles espoused by the majority in Passmore v King * * * we conclude that the facts of this case are readily distinguishable.” The Brower Court found that *11 its separation agreement was distinguishable because there was no evidence it was executed during a pending divorce action and it was clear that the agreement was intended to be an independent contract. In Passmore v King (supra), during their pending divorce action, James Grim and Vivian Grim executed a written agreement in order to settle their respective financial property rights and all other matters arising out of the marriage. The agreement, emphasized the Court, provided “as and for Equitable Distribution” that the wife would pay the husband $18,000 in installments and $40,000 pursuant to a contract of sale for the marital premises. The husband died before closing of the marital home and entry of a judgment of divorce. The husband’s estate commenced an action to recover the $58,000 under the agreement. The majority in Passmore found that the agreement clearly established the parties’ intent that the payments were to be an equitable distribution of the marital property. Finding that the action is more “properly characterized” as one to effectuate equitable distribution rather than damages for breach of contract, under constraint of Sperber v Schwartz (supra), the majority held that the action for equitable distribution abated with the husband’s death and affirmed the trial judge’s dismissal of the estate’s action. While the Passmore majority does not say as much, it appears to have been influenced by the fact that the agreement was made during the pendency of the divorce action. Justice Ritter, in dissent, found that the settlement agreement was a binding and enforceable contract giving rise to vested property rights that accrued to the husband on its execution and prior to his death. He opined that because the courts favor settlements, where there is no evidence of fraud or overreaching, and from the language of the Passmore agreement it is clear that the parties intend the agreement to exist as a separate enforceable contract, unaffected by a subsequent divorce, it should be binding after death (Rainbow v Swisher, 72 NY2d 106, 109; Merl v Merl, 67 NY2d 359, 362; Goldman v Goldman, 282 NY 296). If it was enforceable in the same manner as any other contract during the decedent’s lifetime, the estate should be entitled to recover under the contract (EPTL 11-3.1; Darling v Darling, 241 App Div 57, 59, affd 265 NY 650; Matter of Agliata, 222 AD2d 1025).
Adopting Justice Ritter’s reasoning and distinguishing Pass-more on its facts, Justice Casey in Brower found that the Brower agreement was intended to be an independent contract and therefore enforceable by the estate. Justice Casey also *12 rejected the argument that because the Brower agreement was intended to serve as an opting out agreement in the event of divorce (Domestic Relations Law § 236 [B] [3]), any right to enforcement abated on death.
The Pavese agreements fall into a middle ground factually between the Passmore and Brower agreements. Like Passmore, they were made during the pendency of a divorce action and unlike Brower, they were not an out-of-court separation agreement. However, like Brower, the August 7, 2001 agreement prepared by Barbara Pavese’s counsel clearly evidences the parties’ intent that it be an independent contract to be performed regardless of whether the parties ever actually terminate the marriage. Like the parties in Brower, the petitioner, Barbara Pavese, has also clearly benefitted by some distribution of personal property provided for in the agreements. In this court’s view, the distinction Justice Casey engaged in to distinguish the majority in Passmore on its facts, that the agreement was or was not made during a divorce action, was artful dodging to avoid criticizing the Second Department majority’s “recharacterization” of the estate’s contract action in Passmore. What is central to all of this analysis is the concept of whether the parties intended their agreement to survive death as an independent contract. As Justice Ritter stated in his Passmore dissent (at 243), the estate “is simply seeking to enforce the terms of a valid contract — it is not asking the court to make a determination as to equitable distribution of the parties’ marital property, since they have already done so on their own.” If the parties intended their contract to survive as an independent contract, as they obviously did in this case, these contracts or agreements are distinguishable from those made in Passmore in which the majority found that those parties merely intended that there be an equitable distribution of their marital property. Passmore is distinguishable and this court is free to specifically enforce these agreements in the same manner as any other contract (Brower v Brower, supra at 96). The abatement of the action for divorce and ancillary equitable distribution, therefore, does not abate the enforcement of the surviving agreements opting out of equitable distribution.
This is consistent with the recent practice of the Second Department in enforcing a stipulation of settlement made in a matrimonial action manifesting the parties’ intent to waive their rights as beneficiaries under each other’s wills, where the husband died while the judgment of divorce was unsigned *13 awaiting the signature of the judge who presided over the action (Matter of Mirizzi, 291 AD2d 451, affg 187 Misc 2d 481 [Sur Ct, Richmond County]). While the Surrogate in Mirizzi (187 Misc 2d at 485) went so far as to hold that entry of the judgment of divorce was a mere ministerial act (see, Brown v Brown, 208 AD2d 485), the Appellate Division chose to limit its affirmance to the grounds that the stipulation of settlement barred the wife from any claim under her deceased husband’s will.
Courts throughout the United States have generally treated the continued enforceability of a marital property division agreement as a question of the parties’ intent, where the death of a party occurs prior to divorce (Annotation, Separation Agreements: Enforceability of Provision Affecting Property Rights Upon Death of One Party Prior to Final Judgment of Divorce, 67 ALR4th 237, § 2; Bruce v Dyer, 309 Md 421, 524 A2d 777 [1987]). In at least one case, the fact that a party was in ill health and had a limited life expectancy at the time of an agreement was considered in the court’s determination that the couple intended the agreement to be effective regardless of death prior to obtaining a divorce (In re Garrity’s Estate, 22 Wash 2d 391, 156 P2d 217). Partial performance during a party’s life may also be looked at when considering enforcement of an agreement after death (Pavluvcik v Sullivan, 22 Mass App 581, 495 NE2d 869). In Darling v Darling (supra), the Appellate Division held that an agreement between spouses was enforceable despite the death of the wife prior to divorce and despite an oral agreement that transfers made under the agreement should not become effective until the wife obtained and entered a final decree of divorce. The Court in Darling held that the alleged oral pact was illegal and void. Matter of Violi (65 NY2d 392) held that a separation agreement did not transform a tenancy by the entireties unto a tenancy in common (Kahn v Kahn, 43 NY2d 203; see, General Obligations Law § 3-309). However, that Court did not consider whether the decedent’s property interest, which was extinguished by his death, affects his right to enforce the decedent’s separate and distinct contract rights. In Brower v Brower (supra at 94), the Court, in reaching that issue left open by Matter of Violi, determined that where the decedent’s contract right was enforceable at the time of his death, the contract right survived decedent’s death.
Many cases have indicated that statements in marital property division agreements that they are “final” or the like, have *14 been found to indicate the parties intent that it was to be effective when made, regardless of whether either died prior to entry of a final decree of divorce (Annotation, supra at § 9; In re Garrity, supra). Here, page two of the agreement of August 7, 2001 indicates in large print that this agreement is a “final disposition of equitable distribution” (emphasis added). Paragraph A indicates specifically that this stipulation is in lieu of each of their rights to equitable distribution and is intended to be an opting out agreement pursuant to Domestic Relations Law § 236 (B). Paragraph B states “The parties intend that their real and personal property division as provided in this Stipulation, shall be final and irrevocable” (emphasis added). It further provides that unless the parties execute an amendment, the parties to the stipulation intend that each party’s separate property shall forever remain their own. Incidentally, the August 7, 2001 stipulation, which was submitted to Justice Blydenburgh to be so ordered by counsel for the petitioner, Barbara Pavese, was submitted with a letter indicating that the stipulation settled the remaining equitable distribution issues.
This court therefore concludes that from the clear and unequivocal language of the stipulation of August 7, 2001, the parties intended a final resolution of all their property division issues opting out of equitable distribution and intending that the agreement be enforceable immediately and, therefore, enforceable by the estate of the decedent, Michael Pavese. Accordingly, the abatement of the matrimonial action did not affect the enforceability of the agreements and the application to declare them void and ineffective by Barbara Pavese is denied.
Enforcement of the Stipulations
Since the August 7, 2001 stipulation provides with respect to the treasury direct security account that there shall be a $1,750,000 distribution to each party immediately and the balance shall be further distributed equally between them after the husband receives a credit for 50% of the equity in the marital residence, this court need not decide with respect to this property whether the June 18 and August 2, 2001 stipulations are part of or are incorporated in the August 7, 2001 stipulation or are independently enforceable. Nevertheless, Barbara Pavese’s request for alternative relief has much merit since under the agreements she is entitled to half the funds in the treasury direct account, at least $1,750,000 of which should be paid within 10 days of this decision. Her remaining half share *15 of the account minus the estate’s credit for Michael Pavese’s equity in the marital residence should be provided to her promptly.
The prior temporary restraining order shall be vacated in the decree to be submitted insofar as it relates to the treasury direct account. The restraining order shall remain in eifect with respect to the marital residence until the estate receives its equity interest under the agreements. It shall remain in effect for the Jaguar automobile until the title is transferred to the estate.