**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAY 14, 2020

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MAY 14, 2020

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Estate of | ) | |
| | ) | No. 97463-2 |
| MICHAEL A. PETELLE, | ) | |
| | ) | |
| Deceased. | ) | |
| | ) | |
| GLORIA PETELLE, | ) | En Banc |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHELLE ERSFELD-PETELLE, | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | Filed ___May 14, 2020___ |

JOHNSON, J.—This case involves an issue of contract interpretation,

determining whether a surviving spouse agreed in a separation contract to give up

her right to intestate succession under RCW 11.04.015. Petitioner Michelle

Ersfeld-Petelle seeks reversal of a published Court of Appeals opinion reversing

the trial court's denial of a motion to terminate her right to intestate succession in the estate of her late husband, Michael Petelle. We affirm the Court of Appeals and conclude that petitioner expressly waived her right to intestate succession under the terms of the contract.

## FACTS AND PROCEDURAL HISTORY

After six years of marriage, Michael Petelle filed a petition to dissolve his marriage to petitioner, having separated on January 27, 2017. The parties, both represented by counsel, executed a separation contract and CR 2A agreement on February 14, 2017.[1] The contract divided assets and liabilities, contained an integration clause, and required all modifications to be in writing.

In the contract, the parties agreed "to make a *complete and final settlement of all their marital and property rights* and obligations on the following terms and conditions." Clerk's Papers (CP) at 43 (emphasis added). The contract also provides that the "contract shall be final and binding upon the execution of both parties, whether or not a legal separation or decree of dissolution is obtained[,]" and, by its terms, the contract remained valid and enforceable against the estate of

---

[1] CR 2A states that "[n]o agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same."

either party if either party died after the execution of the contract. CP at 43-44, 48. Though the contract contains a "Full Satisfaction of All Claims" section, the right to intestate succession is not mentioned. CP at 46.

Petitioner claims that she and Michael, the decedent, were contemplating reconciliation, citing an e-mail the decedent sent to his attorney requesting an extension to the "closing date" of the divorce. CP at 17. Before any reconciliation or dissolution occurred, the decedent died intestate on May 1, 2017.

Petitioner filed, and was granted, a petition for letters of administration, appointment of an administrator, an order of solvency, and nonintervention powers for probate of the decedent's estate. Petitioner did not disclose the existence of the dissolution action or the separation contract and did not give notice to any of the decedent's heirs of her intent to petition for nonintervention powers pursuant to RCW 11.68.041(2).

Respondent Gloria Petelle, the decedent's mother, filed in the trial court a motion contesting the grant of powers. The trial court revoked petitioner's nonintervention powers but allowed petitioner to continue to serve as personal representative and required the posting of a $100,000 bond. Respondent petitioned the trial court to terminate petitioner's right to intestate succession, which the trial court denied. Respondent appealed, and the Court of Appeals reversed, holding that petitioner waived her right to intestate succession under the language in the

3

separation contract.[2] *In re Estate of Petelle*, 8 Wn. App. 2d 714, 721, 440 P.3d 1026, *review granted*, 194 Wn.2d 1001 (2019).

## ANALYSIS

Absent disputed material facts, the construction or legal effect of a contract is reviewed de novo. *Yeats v. Estate of Yeats*, 90 Wn.2d 201, 204, 580 P.2d 617 (1978). When interpreting contracts, we attempt "to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties," imputing an intention corresponding to the reasonable meaning of the words used. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). The dispute in this case centers on whether the separation agreement waived statutory intestate rights.

Generally, waiver may be either express or implied; an express waiver is governed by its own terms, while implied waiver may be found based on conduct conclusively establishing intent to waive a right. *Reynolds v. Travelers Ins. Co.*, 176 Wash. 36, 45, 28 P.2d 310 (1934). Both express and implied waiver are asserted in this case.

The doctrine of waiver ordinarily applies to all rights or privileges, and the party alleged to have waived a right must generally have actual or constructive

---

[2] Professor Karen E. Boxx filed an amicus curiae brief in support of the petition for review.

knowledge of the existence of the right. *Bowman v. Webster*, 44 Wn.2d 667, 669, 269 P.2d 960 (1954). In this case, the effect of the separation contract is determined based on the provisions in the agreement and the agreement as a whole.

The statutory right at issue in this case is created under chapter 11.04 RCW, which controls intestate distribution and intestate rights. Under RCW 11.04.015(1)(c), a surviving spouse is entitled to receive three-quarters of a decedent's estate when the decedent is survived by no children but is survived by a parent or sibling. The parties seem to agree that this statutory directive can be waived and dispute whether the terms of the separation agreement establish waiver and how waiver can be accomplished.

Although none of our cases address this exact situation, we have previously decided cases touching on whether similar spousal statutory rights were waived by contract or conduct. The most analogous case cited by respondent and relied on by the Court of Appeals is *In re Estate of Brown*, 28 Wn.2d 436, 440, 183 P.2d 768 (1947). In *Brown*, we found that the language in a separation contract waived a surviving spouse's statutorily created homestead right. There, a husband and wife had entered into a separation contract. Before the parties were divorced, the husband died, leaving behind a will that did not mention his wife. This court found that the wife expressly waived her homestead rights based on the following three provisions in the separation contract: (1) the agreement indicated it was to be a

final and conclusive agreement between the parties regardless of whether either party died before a decree of divorce was entered, (2) the agreement divided the assets free of all claims of the other party, and (3) the agreement was intended to be binding on each spouse's "heirs and assigns forever." *Brown*, 28 Wn.2d at 441. We reasoned that the language indicating the agreement was final and conclusive even if a party died before a divorce was obtained showed an intent to waive and further evidenced contemplation of any rights that might accrue upon death, such as the homestead right at issue. We also noted the postcontract conduct of the parties further supported this interpretation, with the parties having sold their separate interest in real estate to a third party after signing the separation contract. *Brown*, 28 Wn.2d at 440-41. Similar reasoning applies here. Much like the statutory homestead right at issue in *Brown*, the right to intestate succession arises from statute.

In the present case, the separation contract contains more explicit language regarding the resolution of all marital rights than that in *Brown*. Here, the agreement provides, "[T]he parties hereby stipulate and agree to make a *complete and final settlement of all their marital and property rights* and obligations on the following terms and conditions." CP at 43 (emphasis added). The Court of Appeals reasoned that "[t]his language is, arguably, sufficient to constitute waiver of all marital and property rights flowing from the marital relationship, including the

6

right to intestate succession." *Petelle*, 8 Wn. App. 2d at 721. We agree. This provision is an express declaration to resolve "*all* marital and property rights," leaving no ambiguity that some or any marital or property rights remain unresolved. Our conclusion is further supported by a general purpose of separation contracts—to divide assets and liabilities in preparation for divorce.

Petitioner argues that this provision does not effectively waive *all* marital and property rights because the settlement is *on the following terms and conditions* and the right to intestate succession is not specifically mentioned. Petitioner also cites to *Estate of Lundy v. Lundy*, 187 Wn. App. 948, 959-60, 352 P.3d 209 (2015) for the rule that "[d]isclaiming an ownership interest [is] not the same as disclaiming future rights as a beneficiary." But petitioner's argument based on this rule is premised on the assertion that the right to intestate succession is not included in the words "*all their marital and property rights*." Respondent, on the other hand, asserts that "all" means *all*, including the right to intestate succession.

Again, the analysis applied in *Brown* aids us in resolving this issue. In *Brown*, the homestead right was not specifically enumerated in the separation agreement, but we found waiver based on the broad language indicating the agreement was intended to be "final and conclusive" regardless of death and also based on the broad language to release all claims with respect to property. *Brown*,

7

28 Wn.2d at 441. Here, the contractual language similarly uses all-encompassing references to marital and property rights.

The fact that the right to intestate succession was not specifically mentioned in the contract does not limit the clear and explicit language providing the agreement is a complete and final settlement of all marital and property rights. The rights of a surviving spouse under RCW 11.04.015 flow from the marital status. Because the right to intestate succession is a result of the marital status, the right to intestate succession is similar to a marital or property right and we find the right is encompassed in this language.

Petitioner asserts that the right to intestate succession cannot be waived but can only be disclaimed, analogizing to *In re Estate of Baird,* 131 Wn.2d 514, 933 P.2d 1031 (1997). *Baird*, however, is distinguishable because it did not address interests that arise as a result of one's marital status. *Baird* involved an issue of statutory interpretation regarding disclaimers of interest by a beneficiary under chapter 11.86 RCW. There, we held that a beneficiary could not anticipatorily disclaim a future expected intestate interest because such an interest is created at the time of the decedent's death and did not yet exist when the disclaimer was executed. While the intestate interest at issue here is created at the time of death, the right flows as a result of the successor spouse's marital status, a status that exists before the decedent's death. We also note that disclaimer statute did not

replace the doctrine of waiver but created a process by which beneficiaries could disclaim an interest. This conclusion is supported by the use of the word "may" in RCW 11.86.021 and, more pointedly, by the statute providing that disclaimer is barred when "[t]he beneficiary has waived the right to disclaim in writing" under RCW 11.86.051(1)(d).

Ordinarily, statutory interests can be waived. Though we did not label the homestead right as a marital or property right in *Brown*, we viewed the ability to waive this right as an obvious proposition. 28 Wn.2d at 439 ("That the right of homestead may be waived or relinquished, needs no citation of sustaining authority."). The statutory right to intestate succession is substantially similar to the statutory homestead right, and petitioner has not established any basis why the general rule that statutory rights can be waived should not be applied in this case. *Bowman,* 44 Wn.2d at 669 ("The doctrine of waiver ordinarily applies to all rights or privileges to which a person is legally entitled.").

Further, the agreement here provides some *constructive* knowledge from its language. Similar to *Brown*, this contract contains a provision regarding the enforceability of the contract after the death of either party. This shows that the agreement contemplates and makes provision for the possibility of death and establishes some understanding of rights and obligations that could accrue upon death. The contract contains no limiting language as to these rights.

Finally, petitioner asserts the right to intestate succession must be specifically mentioned in a contract to be effectively waived, relying in part on the reasoning in *In re Estate of Boston*, 80 Wn.2d 70, 75, 491 P.2d 1033 (1971). There, we addressed whether a husband orally waived his statutory homestead right and stated that "[a]bsent the most clear and explicit language confirming a voluntary relinquishment of the award as a known right, a waiver will not be found." *Boston*, 80 Wn.2d at 75. This reasoning in *Boston* was tailored to the analysis of the adequacy of an oral waiver and cannot be read to stand for a proposition that a written waiver must specifically list all rights waived. This is made somewhat evident by the sentence immediately following the quoted passage: "While we can conceive of a possible set of circumstances in which a waiver could be found without an express written document, such circumstances are not present here." *Boston*, 80 Wn.2d at 75. Because this rule must be read in the context of the facts in that case, we decline to take this language out of context and apply it to express written waivers.

We affirm the Court of Appeals.

Johnson, J.

WE CONCUR:

Stephens, C.J.

González, J.

Owens, J.

Wiggins, JPT

Montoya-Lewis, J

*In re Estate of Petelle*

No. 97463-2

MADSEN, J. (dissenting)—Michael Petelle and Michelle Ersfeld-Petelle decided to separate in January 2017. In February 2017, they signed a separation contract and CR 2A agreement, which settled the couple's marital and property rights and divided their assets into separate property in anticipation of a divorce. In May 2017, Michael died without a will while he and Michelle were still married.[1] Under the intestate inheritance statute, RCW 11.04.015(1)(c), Michelle was Michael's surviving spouse and entitled to take three-quarters of his net separate estate.

The majority concludes otherwise. Though it acknowledges the separation contract at issue says nothing about statutory inheritance rights, the majority nevertheless holds that Michelle knowingly waived these rights based on general, boilerplate language in the agreement: that the parties settled "all their marital and property rights and obligations on the following terms and conditions." Clerk's Papers (CP) at 43. But the terms and conditions of this agreement concern only the separation and future dissolution of Michael and Michelle's marriage. These rights do not encompass testamentary rights, let alone rights that are not explicitly spelled out in the contract. In short, the majority

---

[1] I refer to Michael and Michelle by their first names for clarity. No disrespect is intended.

finds an express waiver of spousal inheritance rights where none exists. I disagree and respectfully dissent.

ANALYSIS

Separation agreements are used to "promote the amicable settlement of disputes" arising from separation and dissolution of marriage or domestic partnership. RCW 26.09.070(1). Parties may use these contracts to provide maintenance, dispose of property, create a parenting plan, and release each spouse from other obligations. *Id.* If the parties elect to terminate the contract, they may do so without formality. RCW 26.09.070(8).

Interpretation of separation agreements, like other written contracts, is a question of law we review de novo. *Berg v. Hudesman*, 115 Wn.2d 657, 668, 801 P.2d 222 (1990); *see also In re Estate of Brown*, 28 Wn.2d 436, 440, 183 P.2d 768 (1947) (citing *In re Estate of Garrity*, 22 Wn.2d 391, 398, 156 P.2d 217 (1945)). When parties to a separation contract dispute its meaning, courts must ascertain and effectuate the parties' intent at the time they formed the agreement. *In re Marriage of Boisen*, 87 Wn. App. 912, 920, 943 P.2d 682 (1997). Courts accomplish this by "'viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.'" *Berg*, 115 Wn.2d at 667 (quoting *Stender v. Twin City Foods, Inc.*, 82 Wn.2d 250, 254, 510 P.2d 221 (1973)).

2

We determine the parties' intent "by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). The majority notes but does not engage with this directive, choosing instead to analyze whether Michelle waived her rights as a surviving spouse by analogizing to cases concerning the waiver of homestead rights. Majority at 4-7 (citing *Brown*, 28 Wn.2d at 440); *Estate of Lundy v. Lundy*, 187 Wn. App. 948, 959-60, 352 P.3d 209 (2015)). The majority puts the cart before the horse.

We need look no further than the plain terms of the separation contract to discover the intent of the parties. In the contract, Michael and Michelle agreed "to make a complete and final settlement of all their marital and property rights and obligations on the following terms and conditions." CP at 43. The terms and conditions of the agreement relate to Michael and Michelle's separation. *E.g.*, *id.* at 43 (the parties entered into the CR 2A agreement "in order to promote an amicable settlement of disputes *attendant to their separation*") (emphasis added), 44 (terminating community property). They did not contract to legally separate or to dissolve their marriage. *Id.* There is no mention of what would occur should either party die without a will. The objective of the contract is to resolve the parties' property and marital rights in order to separate and possibly divorce—nothing more. *See Berg*, 115 Wn.2d at 667. This was Michael and Michelle's intent at the time they formed the agreement. *See Boisen*, 87 Wn. App. at 920.

3

Instead of interpreting the contract in its proper context, the majority focuses on a single term in one provision to hold the parties intended to resolve more than the rights implicated in separation and divorce. The majority declares that "all" means "all," and the provision settling all marital and property rights constitutes an express waiver of Michelle's rights as a surviving spouse. Majority at 7. I cannot agree.

In the context of the CR 2A agreement, "all" means every right and obligation arising from the *separation and dissolution* of Michael and Michelle's marriage. It is limited to resolving those rights only. The term does not encompass more than the parties' intended it to and, therefore, cannot extend to testamentary decisions on inheritance. To hold otherwise, as the majority does, invests more into the word than did Michael and Michelle. *In re Estate of Bachmeier*, 147 Wn.2d 60, 68, 52 P.3d 22 (2002) ("[C]ourts function to enforce contracts as drafted by the parties and not to change the obligations of the contract the parties saw fit to make.").

In my view, the parties made their intent known. Michael and Michelle sought to accomplish the general purpose of separation contracts—dividing assets and liabilities in order to resolve the immediacy of their separation and possible divorce. They did not intend for the agreement to extend beyond those events. They understood that their divorce may not occur, in which case had a will been made, it would have had to state that Michelle was Michael's wife and that he specifically intended not to include her in the will. *In re Estate of Lindsay*, 91 Wn. App. 944, 949, 957 P.2d 818 (1998) ("A testator has the right to intentionally disinherit a surviving spouse."); *Strait v. Kennedy*, 103 Wn.

4

App. 626, 634, 13 P.3d 671 (2000) ("[A] simple will or codicil to an earlier will stating that the testator intends to leave nothing to the spouse is sufficient [to disinherit a spouse]."). Specific language disinheriting a spouse is required in a will, and I see no reason why it should not be required in a separation contract. "'[W]here a person has the right to die intestate . . . he is charged with full knowledge of who will succeed to his property if he dies intestate [and] the assumption exists that . . . he is satisfied with the will the law of the state made for him.'" *Pitzer v. Union Bank of Cal.*, 141 Wn.2d 539, 550, 9 P.3d 805 (2000) (alterations in original) (quoting *Wilson v. Jones*, 281 S.C. 230, 233, 314 S.E.2d 341 (1984)) (discussing *Hesthagen v. Harby*, 78 Wn.2d 934, 481 P.2d 438 (1971)). Because Michael died intestate while married to Michelle, she was his surviving spouse and entitled to take under RCW 11.04.015(1)(c).

I further disagree with the majority that the contractual language is broad enough to demonstrate Michelle knew she was waiving intestate inheritance rights. *See* majority at 8. The majority states that the rights of a surviving spouse flow from marital status, and so they are encompassed in the separation contract's statement resolving all marital rights. *Id.* But "[w]aiver is the intentional relinquishment of a *known* right." *Wagner v. Wagner*, 95 Wn.2d 94, 102, 621 P.2d 1279 (1980) (emphasis added). As noted above, there is no indication in the terms and conditions of the separation agreement indicating it extended to testamentary decisions, and I can find no authority from this court or from the legislature characterizing intestate inheritance rights as marital or property rights.

5

Moreover, the rights of a surviving spouse include more than just dividing assets for dissolution of marriage. They include rights under the wrongful death statute, ch. 4.20 RCW; rights to Social Security survivor benefits; rights under the Employee Retirement Income Security Act, 29 U.S.C. 18; and the right to control the disposition of remains under RCW 68.50.160. Amicus Curiae Mem. in Supp. of Review at 6. Parties in separation and divorce proceedings are often unrepresented or have minimal access to legal assistance. *Id.* at 4-5. We should not assume, as the majority does, that pro se litigants in the past have comprehended the full legal consequence of agreeing to resolve all marital rights, especially considering the complexity of those rights. This result is even more concerning because the statute governing separation contracts, RCW 26.09.070(1), does not mention settling questions of inheritance. Just as we should not assume pro se litigants will recognize that intestate inheritance rights are encompassed in the terms marital and property rights when no prior authority has endorsed this holding, we should not assume these litigants intended to do something the statute does not mention.

I am also unconvinced that parties may waive their intestate inheritance rights in separation contracts. Michelle contends that an inheritance right in intestacy must be disclaimed, while Gloria Petelle (Michael's mother) argues that only a waiver is needed. The case law we have on separation contracts is very limited and only in the context of homestead rights. *See Brown*, 28 Wn.2d at 439 ("That the right of homestead may be waived or relinquished, needs no citation of sustaining authority."); *Lindsay*, 91 Wn.

6

App. at 950 ("But a surviving spouse may waive the right to a homestead allowance by express writing or conduct that renounces or abandons the right.").

RCW 11.86.011(5) defines a "disclaimer" as "any writing which declines, refuses, renounces, or disclaims any interest that would otherwise be taken by a beneficiary." Statutory disclaimers have their roots in the common law principle that a beneficiary under a will has the right to disclaim or renounce a testamentary gift. *In re Estate of Baird*, 131 Wn.2d 514, 518, 933 P.2d 1031 (1997) (citing MARK REUTLINGER & WILLIAM C. OLTMAN, WASHINGTON LAW OF WILLS AND INTESTATE SUCCESSION 163-67 (1985)). At common law, an interest passing via intestacy could not be disclaimed, but in Washington, this distinction was abrogated when the law of disclaimer was codified. *Id*. RCW 11.86.011(6)(a) explains that an "interest" that may be disclaimed includes "the whole of any property, real or personal, legal or equitable, or any fractional part . . . [and] includes, but is not limited to, an interest created . . . [b]y intestate succession."

An intestate interest is created only upon the death of the creator of the interest, i.e., the death of the intestate. *Baird*, 131 Wn.2d at 520 (citing *In re Estate of Wiltermood*, 78 Wn.2d 238, 240, 472 P.2d 536 (1970); RCW 11.04.250, .290). In *Baird*, we held that at the time a son executed an anticipatory disclaimer of an interest, he did not yet have an "interest" in his mother's estate to disclaim. *Id*. at 520-21.

Here, Michelle could not waive (or disclaim) her right to inherit as a surviving spouse because it did not exist. *See id.* An intestate interest is created only upon the death of the intestate, and Michael passed away after the agreement was signed. The

majority's conclusion thus conflicts with *Baird*'s holding on the creation of an intestate interest.

The majority waves away this conflict. It relies on statements from *Brown* "'[t]hat the right of homestead may be waived or relinquished, needs no citation of sustaining authority'" and from *Bowman* that the doctrine of waiver ordinarily applies to all legal rights. Majority at 9 (quoting Brown, 28 Wn.2d at 439). The statutory homestead right differs substantially from the right to intestate inheritance. *See* Suppl. Br. of Pet'r at 8-9 (detailing the differences between homestead and intestate inheritance rights). The legislature repealed the homestead right in 1997, renaming it an award of family support. *Lindsay*, 91 Wn. App. at 950 n.2. To seek family support, a surviving spouse must petition the court for an award; it does not come about automatically when a spouse dies. RCW 11.54.010(1). Intestate inheritance, however, occurs upon the death of a spouse and no affirmative action is required. RCW 11.04.250. Homestead is not equivalent to intestate inheritance.

In my view, cases concerning the right to a homestead allowance are not controlling and we should instead decide this case consistently with *Baird*—the right of a surviving spouse to inherit from the intestate estate of the other spouse cannot be waived or disclaimed prior to the creation of the interest, i.e., the death of the spouse, and must comport with the statutory requirements of chapter 11.86 RCW. *See, e.g.*, RCW 11.86.031(1) (the disclaimer must be in writing, signed by the disclaimant, identify the interest to be disclaimed, and state the disclaimer and *the extent thereof*).

8

In any event, we should give effect to the plain language of Michael and Michelle's separation agreement—dividing assets and property solely for the purposes of separation and dissolution. Testamentary decisions on inheritance were not expressly mentioned nor were they contemplated by the parties as demonstrated the terms and conditions of their contract. *See Hearst Commc'ns*, 154 Wn.2d at 503 (We determine the parties' intent "by focusing on the objective manifestations of the agreement."). Because I would hold that Michelle is a surviving spouse and RCW 11.04.015(1)(c) governs the distribution of Michael's estate, I respectfully dissent.

_____
Madsen, J.

Yu, J.

Gordon McCloud, J.

9