[No. 10430.   Department One.   December 6, 1912.]

THE STATE OF WASHINGTON, *on the Relation of The City of Seattle, Appellant,* v. SEATTLE ELECTRIC COMPANY, *Respondent.*[1]

CARRIERS — FARES—FRANCHISE—RATES FOR SCHOOL CHILDREN—CONSTRUCTION.  A franchise requiring a street railway to carry "school children" at half fare applies only to those commonly referred to as school children, and not to students in universities or colleges or schools where a particular branch of learning is pursued; especially in view of our statutory distinctions between "school children" and "students" as found in Rem. & Bal. Code, §§ 4317, 4333, 4366, 4406, 4714.

SAME—CONSTRUCTION BY PARTIES.  A franchise ordinance requiring a street car company to carry school children at half fare having been construed by the street car company and the city to apply only to children attending public and private schools, the city cannot later contend that it should be construed to cover students at universities and colleges.

Appeal from a judgment of the superior court for King county, William Hickman Moore, Esq., judge *pro tempore*, entered May 2, 1912, in favor of the defendant, dismissing an action for a writ of mandamus.   Affirmed.

*James E. Bradford* and *H. D. Hughes*, for appellant.
*James B. Howe*, for respondent.

CHADWICK, J.—This is an action brought by the city of Seattle, to compel the Seattle Electric Company to issue half-fare tickets to pupils attending the state university and business colleges located in the city.   The company is operating under a franchise granted in the year 1900, in which it is provided that "school children going to and returning from school shall ride for half fare."   It seems to have been assumed by both parties to the franchise, at the time it was granted and for some time thereafter, that the franchise in-

[1]Reported in 128 Pac. 220.

cluded only those children who were in attendance upon the common schools, as defined in Rem. & Bal. Code, § 4406:

"Common schools shall include schools that are maintained at public expense in each school district and under the control of boards of directors. Every common school, not otherwise provided for by law, shall be open to the admission of all children between the ages of six and twenty-one years residing in that school district."

In October, 1908, the superintendent of public utilities, in correspondence with the company, insisted that the grant was for the benefit of school children, and not for the schools, and that it was available to all children, whether attending public or private schools. After some correspondence, the matter was referred by the company to its attorney, who wrote the superintendent of public utilities as follows:

"In my opinion, school children going to and returning from school have the right to ride for half fare, whether such school children are attending the public schools or private schools. The special privilege given by the franchise to school children does not apply to university students, nor to those attending business schools, nor, in my opinion, does it apply to persons attending evening schools."

This solution was satisfactory to both sides. No further question was made of the franchise until this controversy arose. The relator now seeks to extend the meaning of the word "school," as used in the franchise and heretofore accepted by the parties, so as to include all schools which are made a part of our educational system, as well as schools of a private and technical character, such as business colleges, etc.

Relator has made a very able argument, showing that the word "school" is a generic term and in its broad sense must be held to include all schools or institutions, whether of high or low degree, citing 35 Cyc. 811, 813; 25 Am. & Eng. Ency. Law (2d ed.), p. 7, as well as a number of cases, most of which are referred to in the texts. It requires neither argument nor authority to demonstrate the truth of relator's

contention, but if established it cannot be taken as controlling in the case at bar. Here we are called upon to construe a contract, not to define words—to fathom the intent of the contracting parties and to find the sense of the words used. Counsel for relator relies with some assurance upon the case of *School District No. 20 v. Bryan*, 51 Wash. 498, 99 Pac. 28, 20 L. R. A. (N. S.) 1033, saying that:

"This case is worth careful study since it meets the contention made by the Seattle Electric Company and holds that the grammar schools and high schools of this state are included under the heading of 'common schools.' This case would be authority for the street railway company if the franchise provided that tickets should be issued to children attending common schools."

We went no further in that case than to hold that the statute relied on must "measure up to every requirement of the constitution and code of public instruction;" and this being so, that a part of the common school fund should not be diverted to the use and benefit of a normal school. As hereinbefore suggested, we are not in this case construing the cold letter of a statute or measuring the limit of legislative power by reference to the constitution or existing laws, but are called upon to ascertain the intent of the parties to an existing, and we may say, executed contract. It is one of the first rules of statutory construction, applying to contracts as well, that words are to be taken in their common or ordinary meaning. With this rule to guide us, we have no hesitation in holding, there being nothing in the contract indicating an intention to include all who are voluntarily seeking a higher or technical education, that the words "school children" as employed in the franchise, include only those who are commonly referred to as school children, not students of universities or colleges or schools where a particular branch of learning is pursued.

We find assurance for our holding by reference to existing laws. Our educational code speaks of those attending the

state university, the state college and normal schools as "students" (Rem. & Bal. Code, §§ 4317, 4333, 4366) ; but in chap. 8, § 4406, where our common schools are defined, the legislature adopts the word "children." In § 4714, under the title "Compulsory Education," the law refers to "child" or "children," showing that there is a common acceptation of the words "school children;" and this being so, we must conclude that the parties had it in mind when the contract was entered into. The few cases which have been called to our attention are in line with this reasoning. In *Northrop v. Richmond*, 105 Va. 335, 53 S. E. 962, the court was called upon to construe the meaning of the word "pupils" in a franchise providing for the carrying of pupils at a reduced fare by a street car company. The ordinance as originally proposed provided that the company should place tickets on sale for the accommodation of "children going to and from school." The city council insisted upon the substitution of the word "pupil." The court held the word "pupil" to have a broader meaning, and that it must have been intended to include others than mere school children. The court said that, if the ordinance had been adopted in the terms proposed, it would have been plain and unambiguous, and would have excluded the class of persons who were insisting upon the benefits of the ordinance, they being students at a business college. The court continues:

" . . . the phrase 'children going to and from school' would, without doubt have referred to young people in attendance upon institutions of a subordinate character, and in common acceptation would have embraced only places of primary instruction and establishments for the instruction of children."

In *Selectmen of Clinton v. Worcester Consol. St. R. Co.*, 199 Mass. 279, 85 N. E. 507, where a similar contract was considered by the court, the court differentiated between the meaning of the word "school" as applied to institutions of

higher learning and when applied to schools of lesser degree, saying:

"But ordinarily and without something to indicate that a wider meaning was intended to be given to this word, it will not be taken to include such higher institutions of learning as colleges or universities, or institutions for the teaching of trades, professions or business."

In addition to the authorities cited in the cases quoted, the following may be referred to: *Pike v. State Board of Land Com'rs,* 19 Idaho 268, 113 Pac. 447, Ann. Cas. 1912 B. 1344; *Granger v. Lorenzen* (S. D.), 133 N. W. 259; *State ex rel. Dick v. Kalaher,* 145 Wis. 243, 129 N. W. 1060.

There is another rule of construction which courts will not reject, but on the contrary will accept as a certain guide when looking for the intent of the parties to a contract. The parties to this franchise having accepted and given a certain meaning to the words "school children" and fixed their status under it, the company cannot take from the contract, nor can the city add thereto. The contract is executed except in so far as it is measured by time.

We find that the contracting parties meant to use the words "school children" in their common and popular sense, and there being no controlling statute or intervening equity to modify or enlarge the rights of the city or add to the obligations of the company, the judgment of the judge *pro tempore* is affirmed.

MOUNT, C. J., CROW, PARKER, and GOSE, JJ., concur.