REQUESTED BY: James B. Milliken
President University of Nebraska
In a letter dated December 1, 2006, you have asked this office for its opinion "as to whether the University is a `school' as that word is used in § 69 2441" of the Nebraska statutes. Section 69-2441 is part of the Concealed Handgun Permit Act ("Act") which was enacted by the Nebraska Legislature at its last session. 2006 Neb. Laws LB 454. The Act is now codified at Neb. Rev. Stat. §§ 69-2427 through 69-2447.
In your letter you indicate that the University of Nebraska has a policy of prohibiting the carrying of firearms on its property which it intends to continue after the Act goes into effect on January 1, 2007. Your concern is that, if the University is not considered to be a "school" within the meaning of § 69-2441, then the University will be compelled to post numerous signs banning concealed handguns, something it would rather not do.
Overview of Act and Exceptions
The Act generally sets up a system whereby qualified individuals who have met certain training requirements may obtain permits allowing them to carry concealed handguns. Such permits are "valid throughout the state" (§ 69 2436(1)); and, with certain exceptions, "[a] permitholder may carry a concealed handgun anywhere in Nebraska." § 69-2441(1)(a).
There are, however, in § 69-2441(1)(a) a number of exceptions to the general statement that permitholders may carry concealed handguns "anywhere in Nebraska." These exceptions list places and events where permitholders are not permitted to carry concealed handguns at all. Among those places where permitholders may not carry concealed handguns is any "school, school grounds, school-owned vehicle, or school-sponsored activity or athletic event."
Another exception contained in § 69-2441(1)(a) is any "place or premises where the person, persons, entity, or entities in control of the property or employer in control of the property has prohibited permitholders from carrying concealed handguns into or onto the place or premises." The statute goes on to provide that any such person, entity or employer must post signs notifying the public of the ban on concealed handguns on the premises if the premises are open to the public. §69-2441(2). There is no statutory requirement that persons or entities in control of other places specifically listed as exceptions in § 69 2441(1)(a) post conspicuous notice that concealed handguns are banned.
Accordingly, if the University is deemed to be a "school" under the Act, permitholders will automatically, by law, be prohibited from carrying concealed handguns onto its property. On the other hand, if the University is not deemed to be a "school" under the Act, it will have to post "conspicuous notice" of its policy prohibiting the carrying of concealed handguns in or on the premises.
Analysis
Although we have found no reported Nebraska case enunciating it, there appears to exist a legal rule to the effect that "[w]hen used in a statute or contract, `school' usually does not include universities, business colleges, or other institutions of higher education unless the intent to include such institutions is clearly indicated." 68 Am.Jur.2d, Schools § 1 (2006) (citing Pike v. State Board of Land Com'rs,19 Idaho 268,113 P. 447 (1911), and State v. Seattle Elec. Co., 71 Wash. 213,128 P. 220 (1912)). General application of this rule is supported by the fact that elementary and secondary education in the "schools" is governed, controlled and financed in ways far different than education at the post-secondary level. For example, the state has an obligation to provide "free instruction in the common schools of the state." Neb. Const. art. VII, § 1. It has no such obligation when it comes to post-secondary education. Moreover, the statutes governing generally the existence and operation of elementary and secondary schools are completely different than and distinguished from the statutes governing generally the existence and operation of colleges and universities. Compare, Chapter 79 of the Nebraska Revised Statutes with Chapter 85. Therefore, the rule of statutory construction that requires a clear indication of intent before the term "schools" will be deemed to include colleges and universities is applicable in the present context.
In determining whether the Legislature has clearly indicated an intent that an institution of higher learning such as the University be deemed a "school" under § 69-2441(1)(a) we start with the well-established principle that
 [i]n discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. It is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself.
Japp v. Papio-Missouri River Natural Resources District, 271 Neb. 968,973, 716 N.W.2d 707, 711 (2006).
Applying the rule that statutory use of the word "school" does not usually include institutions of higher learning and the foregoing principle regarding how the intent of the Legislature is ascertained to your question, it appears to us that the University does not fall within the definition of a "school" as that word is used in § 69-2441(1)(a). Neither that statute nor any other part of the Act contains a clear indication that the Legislature intended the word "school" to include universities and colleges.
Indeed, there is clear indication in § 69-2441(1)(a) itself that the Legislature did not mean to include colleges and universities within the meaning of "school." One of the exceptions in that statute states that permitholders may not carry concealed handguns at any "professional, semiprofessional, or collegiate athletic event." (Emphasis supplied). The very next listed exception is for a "school, school grounds, school-owned vehicle, or school-sponsored activity or athletic event." (Emphasis supplied.) Thus it appears that the statute draws a distinction between "schools," on the one hand, and colleges and universities, on the other. Otherwise it would not have been necessary to list "collegiate athletic event(s)" separately, as they would necessarily have been included within "school-sponsored . . . athletic event(s)" if colleges were deemed to fall within the meaning of "schools" for purposes of the statute.
Moreover, having deliberately chosen to use the word "collegiate" in making an exception for "collegiate" athletic events, the Legislature made no other exceptions for events or premises of colleges or universities. In other words, the statute seems to (1) make a distinction between a "school" and a "college or university;" (2) extend a broad exception for "schools," including "school-sponsored athletic events;" and (3) provide no exception for colleges and universities except for their athletic events.
We recognize that in its "plain, ordinary, and popular sense" the term "school" standing alone may be said to encompass colleges and universities. Indeed, the dictionary definition of the noun "school" includes "a college or university." Webster's New Universal Unabridged Dictionary (Deluxe 2nd Ed. 1983) at 1621. Nonetheless, because in the drafting of statutes the word "school" is deemed not to include colleges and universities unless there is clear intent to the contrary and because the "entire language" of § 69-2441(1)(a) does not show such contrary intent and, in fact, suggests just the opposite, we do not believe that the common dictionary definition of "school" as including colleges and universities applies to the exception in the Act barring the carrying of concealed handguns on the premises of any "school."
We also note that the Legislature itself, in Neb. Rev. Stat. §79-101(2) (2003) has defined "school" to mean "a school under the jurisdiction of a school board authorized by Chapter 79." The "school board(s) authorized by Chapter 79" are those which have control over elementary and secondary public schools in their districts. See, e.g., Neb. Rev. Stat. § 79-501 (2003). While this definition is said to be only for purposes of Chapter 79, it still evinces a legislative understanding that the word "school" used in a statute does not automatically include institutions of higher learning.
There are two arguments against the conclusion that the University is not a "school" for purposes of the Act which could be made. First, it is of note that the rule that statutory use of the word "school" does not include universities and colleges applies only in the "usual" situation. For example, when legislation deals with the financing, governance, operation, etc. of educational systems or institutions, it makes sense to distinguish between elementary and secondary schools with compelled attendance and post-secondary educational entities. Here, however, the Legislature was not dealing with educational issues. Rather, it was permitting and regulating the carrying of concealed handguns "throughout the state." It could be said that, by banning the carrying of concealed handguns in any "school," the Legislature meant to protect the students, faculty and staff at any educational institution in the state, including colleges and universities, from any dangers that might be posed by such activity. Therefore, it could be argued that this is not the "usual" situation in which the use of the word "school" is presumed not to include colleges and universities.
This argument, however, founders on the fact that in § 69-2441(1)(a) the Legislature exhibited an understanding of the differences between a college and a "school" by separating "collegiate athletic event(s)" from "school-sponsored . . . athletic event(s)." It is difficult to ignore the rule that the word "school" in a statute does not usually include colleges and universities when the statute itself clearly indicates that the Legislature intended to distinguish between the two.
The second argument that could be made in support of a conclusion that the word "school" in § 69-2441(1)(a) includes the University is based on the fact that Senator Jeanne Combs, the primary sponsor of the Act in the Legislature, in answer to a question during floor debate on the bill, indicated it was her intent that the word "school" be construed "very liberally to include all types of educational enterprises, not just public school districts." Senator Combs also agreed that "school" should be interpreted to include "Creighton University or other public . . . private universities." Floor Debate on LB 454, 99th Neb. Leg., 2nd Sess. 7835 (Jan. 11, 2006). Thus, the legislative history of the Act shows an intent on the part of the sponsoring legislator to include post-secondary educational institutions within the definition of "school" for purposes of the exemption.
The problem with this argument is that "[i]f the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning." Morgensen v. Board of Supervisors, 268 Neb. 26,30, 679 N.W.2d 413, 417 (2004). It is only "when a statutory term is reasonably considered ambiguous" that "a court may examine the legislative history of the act in question to ascertain the intent of the Legislature." Id. For reasons discussed above, we do not believe that the term "school," as used in § 69-2441(1)(a), is ambiguous such that reference can be made to legislative history. Because of the general rule that use of the word "school" in statutes does not usually include colleges and universities and because the Legislature, within the body of § 69 2441(1)(a) itself, distinguished between colleges, on the one hand, and schools, on the other, there appears to be no ambiguity. There is nothing in the statute indicating any intent on the part of the Legislature as a whole to include colleges and universities within the meaning of the term "school," notwithstanding Senator Combs' subjective statements of her personal intent. Therefore, the legislative history cannot be used to read something into the word "school," as used in the statute, that is not there.
Finally, it should be kept in mind that § 69-2443(1) of the Act makes it a misdemeanor crime for any permitholder to carry a concealed handgun where such is prohibited by § 69-2441(1)(a). "A fundamental principle of statutory construction requires that penal statutes be strictly construed." State v. Baker, 264 Neb. 867, 871, 652 N.W.2d 612, 616
(2002). Accordingly, if notice of the ban is not posted and a permitholder is prosecuted for carrying a concealed weapon on University property, the court, in that context, might well construe the exception for any "school" narrowly and conclude that it does not encompass colleges and universities.
While penal statutes are also to be "given a sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served," State v. Aguilar, 268 Neb. 411, 418, 683 N.W.2d 349, 355 (2004), such a "sensible construction" would consider that the overall purpose and object of the Act was to grant permits to carry concealed handguns and to allow permitholders to carry such weapons "anywhere in Nebraska" except where an express statutory exemption bans the carrying of concealed handguns. In other words, a "sensible construction" of §69-2441(1)(a) does not lead to the conclusion that, in light of the overall purpose of the Act, the "school" exemption includes colleges and universities.
Conclusion
As discussed above, there are some arguments that can be made to support a conclusion that the University is a "school" within the meaning of § 69 2441(1)(a). Nonetheless, in light of the rule that the word "school" in a statute is generally not interpreted to include colleges and universities, the other general rules of statutory interpretation set forth herein and the fact that the statute distinguishes between "collegiate athletic events" and "school-sponsored . . . athletic events," we think the better argument is that the University is not to be deemed a "school" under the Act. Accordingly, it is our opinion that the University is not a "school" as that word is used in § 69-2441(1)(a).
Sincerely yours,
 JON BRUNING Attorney General
 Charles E. Lowe Assistant Attorney General
Approved:
Attorney General