# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE ESTATE OF CRAIG S. LUNDY,   )
                                   )    No. 71900-9-I
             Respondent,     )
                                   )    DIVISION ONE
          v.                  )
                                   )    PUBLISHED OPINION
KELLY LUNDY,                )
                                   )
            Appellant.      )    FILED: June 1, 2015
                                   )

APPELWICK, J. — The trial court allowed the Estate to recover Employment Retirement Income Security Act (ERISA)[1] benefits after they had been distributed to the designated beneficiary, his former wife, Kelly. The Estate relied on the couple's dissolution decree and RCW 11.07.010 to assert that Kelly waived her right to the proceeds. ERISA preempts all claims to funds based on state law. The evidence is insufficient to establish that Kelly waived by agreement with Craig the right to receive the proceeds of the ERISA beneficiary designation. We reverse.

## FACTS

Craig and Kelly Lundy[2] married in 1984. For most of his career, Craig worked as a machinist at The Boeing Company. Kelly worked for the Northwest Network of Peacehealth, Inc., a large healthcare organization. Both had retirement accounts with their employers and named each other as the beneficiaries of those accounts. The couple did not have children.

Craig and Kelly divorced in 2009. The dissolution decree "awarded [to Craig] as his separate property . . . [a]ll retirement funds and 401Ks in his name." It also "awarded

---

[1] 29 U.S.C. § 1001, et seq.
[2] Going forward, we refer to the Lundys by their first names for clarity. No disrespect is intended.

[to Kelly] as her separate property . . . [a]ll retirement funds and 401Ks in her name." Neither changed the beneficiary of their retirement account after the divorce.

Craig died on August 4, 2013, intestate and without issue. His sister was appointed personal representative of his "Estate."

At the time of his death, Craig's retirement account was valued at $497,435.77. The account was controlled by ERISA, a federal scheme for regulating employee benefit plans. Kelly was listed as the beneficiary of the account.

On March 3, 2014, the Estate petitioned for recovery of the retirement account from Kelly. The Estate cited RCW 11.07.010(2)(a), which provides that the designation of a spouse as beneficiary of a nonprobate asset is automatically revoked upon dissolution of the marriage. The Estate argued that the trial court should incorporate RCW 11.07.010 into the dissolution decree to find waiver of Kelly's interest in the retirement account. Kelly responded that RCW 11.07.010 was preempted by ERISA and thus did not apply to Craig's retirement account. The trial court ruled in favor of the Estate.

Kelly appeals.

## DISCUSSION

Kelly argues that the trial court erred in granting the Estate's petition to recover the retirement account, because ERISA preempts the Estate's state law claims to the account.[3] The Estate acknowledges that, under ERISA, the plan administrator properly

---

[3] The Estate asserts that Kelly failed to preserve her federal preemption argument, because she conceded below that preemption did not apply. At the hearing, Kelly conceded that federal law did not preempt the Estate from bringing a postdistribution state law claim to recover ERISA funds. However, she challenged the Estate's specific state law claim, arguing that RCW 11.07.010 by its terms does not apply to assets controlled by federal law. This argument is premised directly on federal preemption. It preserves Kelly's right to challenge the state law claim on appeal.

2

distributed the funds to Kelly. However, the Estate challenges Kelly's postdistribution retention of the funds. The Estate asserts that the language of the dissolution decree, coupled with the presumption of revocation in RCW 11.07.010, demonstrates that Kelly waived her right to the benefits of Craig's retirement account.

In Egelhoff v. Egelhoff, 532 U.S. 141, 143, 121 S. Ct. 1322, 149 L. Ed. 2d 264 (2001), the United States Supreme Court held that RCW 11.07.010 is preempted "to the extent it applies to ERISA plans." Egelhoff presented similar facts to those before us. While David and Donna Egelhoff were married, David designated Donna as the beneficiary of his ERISA-governed life insurance plan and pension plan. Id. at 144. The spouses later divorced and David died intestate soon after. Id. He had not changed his beneficiary, and the life insurance proceeds were paid to Donna. Id. David's children from a previous marriage, his statutory heirs under state law, sued Donna to recover the proceeds. Id. In a separate action, they also sued to recover the pension plan benefits. Id. at 145. They alleged that RCW 11.07.010 disqualified Donna as the beneficiary of both plans. Id. at 144-45.

The trial courts both concluded that the plans should be administered in accordance with ERISA and granted summary judgment for Donna as to both plans. Id. at 145. The Court of Appeals consolidated the two cases and reversed, concluding that RCW 11.07.010 was not preempted. Id.

The Washington Supreme Court affirmed, holding that RCW 11.07.010 did not "'refer to'" or have a significant "'connection with'" ERISA such that preemption was appropriate. In re Estate of Egelhoff, 139 Wn.2d 557, 579, 989 P.2d 80 (1999). The court reasoned that RCW 11.07.010 "does not apply immediately and exclusively to an ERISA

3

plan, nor is the existence of such a plan essential to operation of the statute." Id. at 574.

It also emphasized that the statute "does not alter the nature of the plan itself, the administrator's fiduciary duties, or the requirements for plan administration." Id. at 575. The court concluded that the statute "does not operate to divert benefit plan proceeds from distribution under terms of the plan documents," but merely alters "the underlying circumstances to which the distribution scheme of [the] plan must be applied." Id. at 578.

The United States Supreme Court reversed. Egelhoff, 532 U.S. at 152. The Court looked to ERISA's broadly worded preemption provision, 29 U.S.C. § 1144(a), which provides that ERISA "'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan'" covered by ERISA. Id. at 146. The Court found that RCW 11.07.010 had an "impermissible connection with ERISA plans." Id. at 147. In particular, the Court emphasized that RCW 11.07.010 interfered with the administration of ERISA plans:

> The statute binds ERISA plan administrators to a particular choice of rules for determining beneficiary status. The administrators must pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents. The statute thus implicates an area of core ERISA concern. In particular, it runs counter to ERISA's commands that a plan shall "specify the basis on which payments are made to and from the plan," § 1102(b)(4), and that the fiduciary shall administer the plan "in accordance with the documents and instruments governing the plan," § 1104(a)(1)(D), making payments to a "beneficiary" who is "designated by a participant, or by the terms of [the] plan." § 1002(8).

Id.

> [D]iffering state regulations affecting an ERISA plan's "system for processing claims and paying benefits" impose "precisely the burden that ERISA pre-emption was intended to avoid." And as we have noted, the statute at issue here directly conflicts with ERISA's requirements that plans be administered, and benefits be paid, in accordance with plan documents.

4

Id. at 150 (quoting Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 10, 107 S. Ct. 2211, 96 L. Ed. 2d 1 (1987)). As a result, the Court concluded that the funds were properly distributed to Donna, the designated plan beneficiary. See 532 U.S. at 145, 152.

After Egelhoff, there is no doubt that RCW 11.07.010 is inapplicable to ERISA benefits. The case makes clear that federal law mandates the distribution of ERISA benefits to the designated beneficiary, regardless of state law providing otherwise. However, the Estate asserts that Egelhoff does not definitively resolve the question of whether the ownership of ERISA benefits may be challenged after their distribution.

According to Kelly, state law cannot frustrate a federal choice of beneficiary either before or after distribution. She cites Hillman v. Maretta, ___ U.S. ___, 133 S. Ct. 1943, 1952, 186 L. Ed. 2d 43 (2013), where the Supreme Court found preemption of a postdistribution state law claim under a different federal benefit program, the Federal Employees' Group Life Insurance Act (FEGLIA), 5 U.S.C. § 8701 et seq.[4] Under FEGLIA, life insurance benefits are paid according to a specified "order of precedence," accruing first to the designated beneficiary or beneficiaries, and then, if there is no designated beneficiary, to the employee's widow or widower, children, parents, executor, or other next of kin. 5 U.S.C. § 8705(a). The Hillman Court struck down a Virginia statute rendering a former spouse liable to a new spouse for insurance policy proceeds the new spouse would have received were it not for federal law. Id. at 1948, 1953. The Court observed that the Virginia statute "displaces the beneficiary selected by the insured in

---

[4] Kelly did not raise her Hillman argument below. However, "the application of RAP 2.5(a) is ultimately a matter of the reviewing court's discretion." Bennett v. Hardy, 113 Wn.2d 912, 918, 784 P.2d 1258 (1990). We exercise this discretion to address Hillman to fully review the jurisprudence on this issue.

5

accordance with FEGLIA and places someone else in her stead." Id. at 1952. The Court concluded that the statute "thereby 'frustrates the deliberate purpose of Congress' to ensure that a federal employee's named beneficiary receives the proceeds." Id. (quoting Wissner v. Wissner, 338 U.S. 655, 659, 70 S. Ct. 398, 94 L. Ed. 424 (1950)).

Kelly asserts that this holding "establishes that federal law controls all aspects of designating a beneficiary, whether before or after distribution." Hillman interprets a different statute than Egelhoff, and the reasoning varies slightly between the two: Egelhoff focused on the ease of administration, while Hillman focused on ensuring ownership of proceeds. But, both cases make clear that the account proceeds go to the federally determined beneficiary regardless of state law to the contrary. Thus, while Hillman does not directly control here, it suggests that the same outcome would be appropriate in this situation.

We therefore turn back to case law addressing ERISA. Three years before Egelhoff, the Supreme Court held that ERISA preempted a state law allowing a nonparticipant spouse to transfer by will an interest in her husband's pension plan benefits to their sons. Boggs v. Boggs, 520 U.S. 833, 835-36, 841, 117 S. Ct. 1754, 138 L. Ed. 2d 45 (1997). The Court rejected the argument that the state law claim, which affected only the post-distribution disposition of proceeds, thus failed to implicate the regulatory concerns of ERISA:

> The statutory object of the qualified joint and survivor annuity provisions . . . is to ensure a stream of income to surviving spouses. . . .
>
> ERISA's solicitude for the economic security of surviving spouses would be undermined by allowing a predeceasing spouse's heirs and legatees to have a community property interest in the survivor's annuity.

6

Id. at 843. The Court concluded that

> [i]t would undermine the purpose of ERISA's mandated survivor's annuity to allow Dorothy, the predeceasing spouse, by her testamentary transfer to defeat in part Sandra's entitlement to the annuity § 1055 guarantees her as the surviving spouse. This cannot be. States are not free to change ERISA's structure and balance.

Id. at 844. Boggs demonstrates that ERISA can preempt state law as to the postdistribution disposition of proceeds. The difference between that case and the present is only the nature of the payments made: the Boggs decision involved annuity benefits, while here there was a lump sum payment from a retirement account.

The Estate asserts that, in Kennedy v. Plan Administrator for Dupont Savings and Investment, 555 U.S. 285, 129 S. Ct. 865, 172 L. Ed. 2d 662 (2009), the Court subsequently suggested that it would permit a postdistribution claim for ERISA benefits in this scenario. In Kennedy, the Court considered the effect of an ex-wife's waiver of ERISA benefits in a dissolution decree. Id. at 288. While William and Liv Kennedy were married, William designated Liv the beneficiary of his ERISA-governed savings and investment plan (SIP). Id. at 289. Upon their divorce, they signed a dissolution decree that provided: Liv "'is divested of all right, title, interest, and claim in and to . . . [a]ny and all sums . . . the proceeds [from], and any other rights related to any . . . retirement plan, pension plan, or like benefit program existing by reason of [William's] past or present or future employment.'" Id. at 289 (alterations in original). When William died, the plan administrator relied on the designation form and paid the balance of the SIP to Liv. Id. at 289-90. William's estate sued the plan administrator, claiming that Liv waived her right to the benefits and that the administrator thus violated ERISA by paying the benefits to Liv. Id. at 290.

7

The Kennedy Court held that the funds were properly paid to Liv, because the ERISA administrator was not required to honor the waiver in the dissolution decree when distributing the funds. Id. at 299-300. It reasoned that the plan documents "provide that the plan administrator will pay benefits to a participant's designated beneficiary, with designations and changes to be made in a particular way. William's designation of Liv as his beneficiary was made in the way required; Liv's waiver was not." Id. at 304. The Court noted though that it did not "express any view as to whether the Estate could have brought an action in state or federal court against Liv to obtain the benefits after they were distributed." Id. at 299 n.10. Therefore, Kennedy signals that the propriety of postdistribution claims for ERISA benefits is an open question.

However, the Ninth Circuit has indicated that such claims cannot be premised on avoiding ERISA's mandates. See Carmona v. Carmona, 603 F.3d 1041, 1062 (2008). In Carmona, the court discussed a pre-Egelhoff case, Emard v. Hughes Aircraft, Inc., 153 F.3d 949 (9th Cir. 1998), abrogated by Egelhoff, 532 U.S. 141. See 603 F.3d at 1061-62. The Emard court held that ERISA did not preempt California law permitting the imposition of a constructive trust on insurance proceeds after their distribution to the designated beneficiary. 153 F.3d at 954-55. It reasoned that "ERISA is designed to ensure that benefits are paid out. It is silent as to the disposition of those funds after their receipt by the beneficiary." Id. at 955. The court further concluded that ERISA did not preempt state law requiring distribution of ERISA insurance proceeds to a person other than the designated beneficiary. Id. at 956. It reasoned:

> In enacting ERISA, Congress intended to safeguard the rights of plan participants and beneficiaries as against employers, insurers and administrators of employee benefit plans. See 29 U.S.C. § 1001 (setting

forth Congress' findings and declaration of policy). ERISA therefore preempts state laws that concern those matters. But we see no indication that Congress intended to safeguard an individual beneficiary's rights to the proceeds of an ERISA insurance plan as against another person claiming superior rights, under state law, to those proceeds.

Id. at 958.

As the Carmona court observed, Emard was abrogated by Egelhoff. 603 F.3d at 1062; see also Egelhoff, 532 U.S. at 146 (noting the lower courts' split over whether ERISA preempts state laws and citing Emard as finding no preemption). Thus, the Carmona court said, "to the extent [Emard] can be interpreted as an end-run around ERISA's mandates, [it] no longer survives." 603 F.3d at 1062.

Like the Emard court, the Carmona court considered the propriety of a state law constructive trust on the proceeds of an ERISA account. See id. at 1061. Lupe Carmona designated his then-wife, Janis, as his survivor beneficiary under two pension plans which provided qualified joint and survivor annuity benefits. Id. at 1048. While they were still married, Lupe retired and began collecting pension benefits. Id. When the pair divorced two years later, Lupe sought to revoke Janis's designation as the survivor beneficiary. Id. The plan administrators refused to change the beneficiary and indicated that the designation was irrevocable upon Lupe's retirement. Id. In the couple's dissolution decree, the Nevada family court awarded Lupe both pension plans as his separate property. Id.

When Lupe remarried, he petitioned the family court to revoke Janis's designation as survivor beneficiary and substitute his new wife, Judy. Id. at 1049. After Lupe's death, the Nevada state court concluded that Janis waived her right to the plan benefits by virtue of the divorce decree and that she would be unjustly enriched if she remained the

9

beneficiary. Id. The court ordered the plan administrators to change the survivor beneficiary from Janis to Judy, or, in the alternative, ordered the funds Janis received to be placed in a constructive trust with Judy as beneficiary. Id. The Ninth Circuit held that the plan administrator was not required to redirect the surviving spouse benefits to Judy. Id. at 1061. It further held that the constructive trust was impermissible:

> In this case, the constructive trust that the state court created was explicitly an attempt to avoid ERISA's QDRO [(qualified domestic relations order)], preemption, and antialienation provisions. We conclude that Congress did not intend to permit the reassignment of surviving spouse benefits and, therefore the constructive trust remedy that the state court tried to impose is also preempted by ERISA. It may not be that all constructive trusts instituted by state courts, particularly those that seek to recover ill-gotten gains, will have a sufficient connection with or reference to an ERISA plan to trigger ERISA's preemption provision.
>
> But when a state court creates a constructive trust with the explicit purpose of avoiding ERISA's rules, it too must be preempted.

Id. at 1062.

Egelhoff establishes that ERISA preempts RCW 11.07.010 and other similar state statutes. Boggs indicates that ERISA preemption can apply both to pre- and post-distribution state law actions. And, Carmona explicitly disapproves of state law "end-runs" around ERISA imposed by state courts. In sum, state law claims to recover postdistribution ERISA benefits have been thus far rebuffed. Kennedy does not recognize an open question in the context of a state-law-based claim to postdistribution of ERISA benefits, but only in the context of waiver by private agreement between the parties.

Here, the Estate can establish no such agreement. It argues that the court should look to RCW 11.07.010 to discern the parties' intent. But, as Carmona made clear, state law "cannot be used to contravene the dictates of ERISA." 603 F.3d at 1061. The Estate

cannot revive a preempted statute simply by applying it in a postdistribution argument that does not directly implicate ERISA.

Moreover, waiver is not apparent on the face of the dissolution decree. Kelly did not expressly disavow any interest in the proceeds of the account as beneficiary. The decree says only that the retirement account is "awarded [to Craig] as his separate property." Disclaiming an ownership interest in not the same as disclaiming future rights as a beneficiary. By contrast, in many cases cited by the Estate, the ex-spouse explicitly waived the right to receive ERISA proceeds. See, e.g., Kennedy, 555 U.S. at 289 (ex-spouse divested of "'all right, title, interest, and claim in'" ERISA accounts); Andochick v. Byrd, 709 F.3d 296, 297 (2013) (ex-spouse waived "any interest, including but not limited to any survivor benefits" and "'released and relinquished any future rights as a beneficiary under'" ERISA plans) , cert. denied, 134 S. Ct. 235, 187 L. Ed. 2d 145 (2013); Estate of Kensinger v. URL Pharma, Inc., 674 F.3d 131, 132-33 (2012) (ex-spouse agreed to "waive, release, and relinquish any and all right, title and interest" in ERISA accounts).

In the absence of an express agreement, waiver requires "unequivocal acts or conduct evincing an intent to waive." Wagner v. Wagner, 95 Wn.2d 94, 102, 621 P.2d 1279 (1980). Here, there was no such clear conduct demonstrating Kelly's intent to waive her rights as beneficiary of Craig's retirement account. The only evidence the Estate cites regarding intent is Kelly and Craig's lack of closeness after their divorce. But, we cannot infer intent from "doubtful or ambiguous factors." Id.

Federal law preempts a party's reliance on RCW 11.07.010(2)(a) for recovery of ERISA funds in the hands of the designated beneficiary. If Kennedy would allow recovery of funds from the designated beneficiary on the basis of waiver by private agreement, the

agreement here does not establish an express waiver of the rights to receive those funds as a beneficiary. The Estate has not established a valid postdistribution claim to recover ERISA benefits.[5]

We reverse.[6]

WE CONCUR:

---

[5] In addition to waiver, the Estate argues that awarding Kelly the account would constitute unjust enrichment, because the "circumstantial evidence supports that Craig intended to leave the retirement funds to his family and not his ex-wife." Though the parties dispute whether Craig truly intended to leave the account to Kelly, the only actual evidence as to his intent was the beneficiary designation. The Estate does not demonstrate that it would be inequitable to follow Craig's designation. We find no merit in the unjust enrichment claim. Unjust enrichment is an equitable remedy not dissimilar to the constructive trust imposed by the trial court and disapproved of by the Ninth Circuit in Carmona. 603 F.3d at 1062.

[6] We also deny the parties' various motions to strike and impose sanctions. Both parties engaged in practices that we discourage. Motions to strike sentences or sections out of briefs waste everyone's time. O'Neill v. City of Shoreline, 183 Wn. App. 15, 24, 332 P.3d 1099 (2014). The citations to unpublished cases in the briefing was in violation of our rules. GR 14.1(a); Johnson v. Allstate Ins. Co., 126 Wn. App. 510, 519, 108 P.3d 1273 (2005). However, we do not welcome motions from the parties seeking sanctions for doing so. This court is aware of its authority to award sanctions and can determine on its own when to do so. See RAP 18.9(a) ("The appellate court on its own initiative . . . may order a party or counsel [who] fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court.").