## NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Estate of:

MICHAEL A. PETELLE,

               Deceased.

GLORIA PETELLE,

               Respondent,

       v.

MICHELLE ERSFELD-PETELLE,

               Appellant.

DIVISION ONE

No. 82526-7-I

PUBLISHED OPINION

HAZELRIGG, J. — As personal representative of her son Michael Petelle's estate, Gloria Petelle[1] brought a declaratory judgment action against Michelle Ersfeld-Petelle seeking interpretation of the separation agreement signed by Michelle and Michael prior to his death. Gloria contended that the language in the agreement constitutes sufficient waiver of Michelle's beneficiary rights to Michael's retirement account. In her written opposition, Michelle countered that the Employment Retirement Income Security Act of 1974[2] (ERISA) preempts Gloria's attempt to recover the funds and, further, that the agreement is not a sufficient waiver. The superior court commissioner denied Gloria's petition for declaratory

---

[1] Because the parties to this dispute share a last name, we refer to them by their first names to avoid confusion. No disrespect is intended.

[2] 29 U.S.C. §§ 1001-1461.

judgment both as preempted by ERISA and because he found the waiver in the separation agreement was insufficient. The commissioner also denied Gloria's motion for reconsideration.

On Gloria's subsequent motion for revision, the reviewing judge reversed in part, expressly finding no preemption under ERISA and that the separation agreement constitutes a sufficient waiver under In re Estate of Lundy v. Lundy.[3] Michelle appealed and both parties present the same arguments on appeal as they did in the trial court. Finding no errors, we affirm.

FACTS

Michelle Ersfeld-Petelle and Michael A. Petelle entered into a separation agreement, formalized under the terms of CR 2A,[4] on February 14, 2017 in anticipation of the pending dissolution of their marriage. In broad language, the separation agreement divided the couple's assets, established various rights, and bound the parties to execute the terms of the agreement. It also contained a clause noting that the agreement was to remain "valid and enforceable" against each party's estate should either die following the execution of the contract. Michael died intestate on May 1, 2017 before any final dissolution decree was entered. At the time of Michael's death, Michelle remained the named beneficiary on Michael's simplified employee pension-independent retirement account (SEP-IRA).

---

[3] 187 Wn. App. 948, 352 P.3d 209 (2015).

[4] CR 2A governs stipulations and reads:

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

The agreement at issue here is titled "Separation Contract and CR2A Agreement" and was signed by Michelle, Michael, and their respective attorneys.

The agreement expressly provides for the division of assets, which includes the retirement and investment accounts acquired during the marriage, stating that Michael and Michelle are each entitled to "50% of the total retirement assets acquired during the marriage." This clause is related to the following section of the agreement:

> Employment Benefits. Except as otherwise specifically provided herein, each party shall retain as his or her separate property, free from any interest in the other, all rights and benefits which have been derived as a result of past or present employment, union affiliations, military service, or United States, state or other citizenship (except rights the parties are entitled to receive by virtue of this relationship); including but not limited to sick leave benefits, insurance, educational benefits and grants, health or welfare plans and all other contractual, legislated or donated benefits, whether vested or unvested, and whether directly or indirectly derived through the activity of the parties. Except as otherwise specifically provided, each party shall retain all rights and benefits to which he or she is entitled by state or federal law, including Social Security benefits.

On November 16, 2020, in her capacity as personal representative of Michael's estate, Gloria Petelle petitioned the superior court for "a declaratory judgment construing the Separation Contract . . . and a holding that [Michelle] waived any right under Washington law to retain or keep more than 50% of any investment or retirement account acquired during the Petelle marriage." The superior court commissioner denied the petition after finding that Gloria's claim was preempted by ERISA and associated case law. The commissioner later denied Gloria's motion for reconsideration.

On February 10, 2021, Gloria filed a motion for revision of the commissioner's ruling. On March 17, 2021, after reviewing the various pleadings and taking argument from the parties, a superior court judge issued an "Order

No. 82526-7-I

Revising Commissioner in Part & Declaring Rights & Liabilities Pursuant to Contract" and granted Gloria's petition. The court expressly found that the agreement was a sufficient waiver under In re Estate of Lundy v. Lundy, 187 Wn. App. 948, 352 P.3d 209 (2015), and was not preempted by ERISA. Michelle timely appeals.

ANALYSIS

I.      ERISA Preemption of State Law & Beneficiary Rights Under ERISA

Michelle avers that the superior court erred in its ruling on revision. She argues that ERISA requires the plan administrator to distribute funds according to the plan documents and that the estate cannot compel the plan administrator to do otherwise. She asserts that to do so would undermine ERISA's stated purpose: the reliable and orderly payout of retirement accounts to their named beneficiaries. See 29 U.S.C. § 1001. In briefing, Gloria correctly identifies this as a conflation of the issues: "Michelle's argument that ERISA preempts state law with respect to beneficiary designations of retirement plans governed by ERISA is irrelevant, because the declaratory judgment action did not seek an adjudication with respect to beneficiary designations of retirement plans governed by ERISA."[5] Gloria did not bring an action under state law to compel a plan administrator to take any action, instead she sought clarification of the terms of the CR 2A agreement which governs Michelle's handling of the funds following distribution by the plan administrator.

_____

[5] Br. of Resp't at 6.

- 4 -

No. 82526-7-I

Interpretation of the CR 2A agreement is not preempted by federal law, nor is enforcement of the language the Petelles drafted into their separation agreement. The preemption authority Michelle emphasizes in briefing addresses the distribution of funds by the plan administrator, not contractual agreements by private parties. See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 555 U.S. 285, 129 S. Ct. 865, 172 L. Ed. 2d 662 (2009); Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 121 S. Ct. 1322, 149 L. Ed. 2d 264 (2001); Boggs v. Boggs, 520 U.S. 833, 117 S. Ct. 1754, 138 L. Ed. 2d 45 (1997); Carmona v. Carmona, 603 F.3d 1041 (9th Cir. 2010). The United States Supreme Court made clear the intent underlying ERISA in Egelhoff:

> [D]iffering state regulations affecting an ERISA plan's "system for processing claims and paying benefits" impose "precisely the burden that ERISA pre-emption was intended to avoid." And as we have noted, the statute at issue here [RCW 11.07.010] directly conflicts with ERISA's requirements that plans be administered, and benefits be paid, in accordance with plan documents.

532 U.S. at 150 (citation omitted) (quoting Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 10, 107 S. Ct. 2211, 96 L. Ed. 2d 1 (1987)). A declaratory judgment by the state court as to the terms of the CR 2A agreement does nothing to burden ERISA requirements with regard to how the plan administrator distributes the retirement funds.

In Lundy, this court sought to clarify the current landscape as to ERISA preemption of state law. 187 Wn. App. at 953-59. We held that though state regulation "cannot be used to contravene the dictates of ERISA," waiver by private agreement between the parties can be appropriate. Id. at 959. This position is further supported by federal case law. The United States Supreme Court's opinion

- 5 -

No. 82526-7-I

in Kennedy expressly allows for state court enforcement of a contract such as the

CR 2A agreement in the present case:

> Nor do we express any view as to whether the Estate could have brought an action in state or federal court against [surviving ex-spouse] to obtain the benefits after they were distributed. Compare Boggs v. Boggs, 520 U.S. 833, 853, [117 S. Ct. 1754, 138 L.Ed.2d 45] (1997) ("If state law is not pre-empted, the diversion of retirement benefits will occur regardless of whether the interest in the pension plan is enforced against the plan or the recipient of the pension benefit"), with Sweebe v. Sweebe, 474 Mich. 151, 156–159, 712 N.W.2d 708, 712–713 (2006) (distinguishing Boggs and holding that "while a plan administrator must pay benefits to the named beneficiary as required by ERISA," after the benefits are distributed "the consensual terms of a prior contractual agreement may prevent the named beneficiary from retaining those proceeds"); Pardee v. Pardee, 2005 OK CIV App. 27, ¶¶ 20, 27, 112 P.3d 308, 313–314, 315–316 (2004) (distinguishing Boggs and holding that ERISA did not preempt enforcement of allocation of ERISA benefits in state-court divorce decree as "the pension plan funds were no longer entitled to ERISA protection once the plan funds were distributed").

555 U.S. at 299 n.10. The purpose of Gloria's current action is to clarify the scope

of Michelle's waiver of rights as to a 50 percent portion of the funds in Michael's

SEP-IRA as stipulated in the CR 2A agreement.[6] Nothing in the declaratory

judgment directs the plan administrator to do anything with regard to Michael's

account, therefore ERISA is not implicated. It merely confirms that

> [t]he Separation Contract and CR2A Agreement requires [Michelle] to perform acts necessary or convenient to evenly divid[e] every investment account or retirement account acquired during the Petelle marriage on a 50/50 basis, including any retirement or investment account governed by [ERISA.]

---

[6] The declaratory judgment explicitly references five separate Edward Jones retirement accounts and the record demonstrates that Michelle holds three of them in her name only. Another was held by both Michael and Michelle as joint tenants with right of survivorship. The SEP-IRA referenced by the parties in briefing lists Michael alone as the account holder. The parties focus on this account in this appeal.

- 6 -

No. 82526-7-I

This is nothing more than a reiteration of what Michelle agreed to do when she and Michael signed the separation agreement.

Michelle makes a related argument that federal rollover provisions also work to preempt the CR 2A agreement.[7] They do not. The relevant section of the Internal Revenue Code (IRC) governing individual retirement accounts (IRAs), incorporated into ERISA by reference, provides a beneficiary the ability to rollover the funds distributed from an inherited SEP-IRA account, and shields the beneficiary from tax liability. 26 U.S.C. § 408(d)(3)(A)-(C). Despite the CR 2A separation agreement, Michelle was legally Michael's wife when he died because their dissolution had not been finalized. Michelle is also the named beneficiary of Michael's personal SEP-IRA as no changes to the beneficiary designation for his account were made after the parties executed the CR 2A agreement. As Michael's surviving spouse and the designated beneficiary of the account, the federal statutory scheme facilitates the transfer of the funds into Michelle's own account, should she choose to roll them over. See 26 U.S.C. § 402, § 408. But, Michelle's rollover rights under federal law do not circumvent her obligations under the CR 2A agreement, particularly as the value of Michael's SEP-IRA is likely easily determined. Even if Michelle exercised the rollover option, she could still be liable to Michael's estate for an amount equaling 50 percent of the value of the SEP-IRA under the plain terms of the CR 2A agreement.

---

[7] While Michelle asserted rollover is set out in ERISA, it does not independently provide for rollover. Rather, ERISA expressly incorporates the rollover provisions contained in the Internal Revenue Code (IRC) and requires that plan documents comply with the IRC. See 29 U.S.C. § 1053 (incorporating various 26 U.S.C. section's definitions of "rollover contributions"); § 1104 (incorporating 26 U.S.C. § 408 rollover provisions as basis for establishing control of the retirement asset by the participant or the beneficiary); § 1021 (incorporating § 408 standards and procedures for withdraws and rollovers as part of the required disclosure).

- 7 -

Unlike Lundy, Gloria's present action has nothing to do with a state statute,[8] but instead merely calls for the interpretation of a private agreement. Michelle does have the right under federal law to rollover the funds, but that is the extent of the protection that it provides and her choice to exercise the rollover provision does nothing to change her contractual agreement to waive all interest in 50 percent of the value of the SEP-IRA at issue. ERISA only controls the actions taken with regard to the distribution of the funds in the account. After that has occurred, the CR 2A agreement is triggered and state law may direct the division of the funds pursuant to the private contract.

II.     Sufficiency of the Waiver in the CR 2A Agreement under Lundy

Michelle further asserts the court's interpretation of the language in the separation agreement is erroneous. She contends, regardless of her preemption argument, that the plain language of the "Employment Benefits" section of the CR 2A agreement is insufficient under Lundy. She specifically avers that the waiver clause lacks an explicit reference to the rights that are being disclaimed and to the accounts at issue. Gloria also relies on a plain reading argument to support her position that the language in the agreement is a sufficient waiver of beneficiary rights under Lundy.

"Normal contract principles apply to the interpretation of a CR 2A agreement." In re Marriage of Pascale, 173 Wn. App. 836, 841, 295 P.3d 805 (2013). "Interpretation of the terms of a contract is a question of law and is reviewed de novo by the appellate court." Knipschield v. C-J Recreation, Inc., 74

---

[8] RCW 11.07.010 "provides that the designation of a spouse as beneficiary of a nonprobate asset is automatically revoked upon dissolution of the marriage." Lundy, 187 Wn. App. at 951.

No. 82526-7-I

Wn. App. 212, 215, 872 P.2d 1102 (1994). When the language of a contract is in question, the court will "determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005).

> The doctrine of waiver ordinarily applies to all rights or privileges to which a person is legally entitled. A waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. It may result from an express agreement, or be inferred from circumstances indicating an intent to waive. Thus waiver is essentially a matter of intention.

Dombrosky v. Farmers Ins. Co. of Wash., 84 Wn. App. 245, 255, 928 P.2d 1127 (1996) (citations omitted). The relevant section of the CR 2A agreement reads as follows:

> Employment Benefits. Except as otherwise specifically provided herein, each party shall retain as his or her separate property, free from any interest in the other, all rights and benefits which have been derived as a result of past or present employment, union affiliations, military service, or United States, state or other citizenship (except rights the parties are entitled to receive by virtue of this relationship); including but not limited to sick leave benefits, insurance, educational benefits and grants, health or welfare plans and all other contractual, legislated or donated benefits, whether vested or unvested, and whether directly or indirectly derived through the activity of the parties. Except as otherwise specifically provided, each party shall retain all rights and benefits to which he or she is entitled by state or federal law, including Social Security benefits.

A second critical section of the CR 2A agreement is Exhibit A, which is attached to and expressly incorporated into the agreement. The CR 2A agreement states that "[t]he property and debts have been equitably divided between the parties as per

- 9 -

No. 82526-7-I

**Exhibit A** attached hereto." Exhibit A then allots to each "50% of the total retirement assets acquired during the marriage."

The parties do not dispute that the contract is proper as to its elements and its formation.[9] Instead, Michelle argues that the CR 2A agreement language is not specific enough about the accounts or rights addressed by the agreement to function as a valid waiver of her interest in the SEP-IRA. Lundy controls here. 187 Wn. App. 948. In Lundy, the estate "petitioned for recovery of the retirement account from Kelly [Lundy]." 187 Wn. App. at 951. Kelly and Craig Lundy were divorced, but Craig had not removed Kelly as the listed beneficiary on his retirement account. Id. The retirement account was governed by ERISA. Id. The dissolution decree simply said that the court, "'awarded [to Craig] as his separate property . . . [a]ll retirement funds and 401Ks in his name'" and "'awarded [to Kelly] as her separate property . . . [a]ll retirement funds and 401Ks in her name.'" Id. at 950-51 (alterations in original).

In the trial court, Craig's estate argued that under the dissolution decree and RCW 11.07.010, Kelly had "waived her right to the proceeds" of the ERISA-governed retirement account. Lundy, 187 Wn. App. at 950. Kelly averred that ERISA preempted the estate's claim insofar as it relied on the state statute, citing Egelhoff, where "the United States Supreme Court held that RCW 11.07.010 is preempted 'to the extent it applies to ERISA plans'" and that the waiver was insufficient to disclaim her rights as a beneficiary to the retirement account. Lundy,

---

[9] See Trotzer v. Vig, 149 Wn. App. 594, 605, 203 P.3d 1056 (2009) (elements of a contract); see also Keystone Land & Dev. Co. v. Xerox Corp., 152 Wn. 2d 171, 94 P.3d 945 (2004) (objective manifestation test for determining intent).

- 10 -

No. 82526-7-I

187 Wn. App. at 952 (quoting Egelhoff, 532 U.S. at 143). The trial court awarded the funds to the estate and Kelly appealed.

This court reversed the trial court's ruling, citing two distinct reasons. Lundy, 187 Wn. App. at 950. First, we held that the United States Supreme Court made it clear in Egelhoff that RCW 11.07.010 was "inapplicable to ERISA benefits." Id. at 954. Second, we determined that the language of the clause contained in the dissolution decree was insufficient to establish an express waiver because the surviving spouse did not give up their future interest as a beneficiary, only ownership interests, and the clause generally lacked the specificity that was present in other cases regarding waivers of ERISA-governed retirement benefits. Id. at 959-60. Lundy further demonstrated the inadequacy of the waiver in the dissolution decree by noting several other waiver clauses that were more explicit, pointing out that the ERISA proceeds or retirement benefits were mentioned directly. Id. at 960.

Here, Michelle contends that the clause in the CR 2A agreement is similar to the language in the dissolution decree found to be inadequate in Lundy because it does not make a direct reference to the accounts at issue or the rights being disclaimed. Gloria counters that it is sufficient because, "[t]he language employed by Michael and Michelle to divide the retirement accounts evenly between themselves and waive any claim to the other's portion of the divided accounts, including any unvested rights to the other's account, satisfies the Lundy court's demand for a waiver that disclaimed ownership as well as future rights as a

- 11 -

No. 82526-7-I

beneficiary."[10]  Gloria further argues that the adequacy of the clause under Lundy can be determined on its plain meaning alone.  The language at issue expressly begins, "Except as otherwise specifically provided herein, each party shall retain as his or her separate property, free from any interest in the other, all rights and benefits which have been derived as a result of past or present employment" before continuing on to describe the class of benefits with more specificity.

Michael and Michelle were co-owners of the business associated with the SEP-IRA account at issue here and there is nothing in the record to suggest they were unaware of the benefits that flowed from their employment with the family business.  Further, it is reasonably understood that the "rights and benefits" that derive from employment include retirement plans like Michael's SEP-IRA.  The Petelle clause is more explicit than the waiver in the Lundy dissolution decree, which only disclaimed ownership rights. The agreement here disclaims "all rights and benefits."  "All" means all.  See Thomas Ctr. Owners Ass'n v. Robert E. Thomas Trust, 20 Wn. App. 2d 690, 703, 501 P.3d 608 (2022) ("This is no mystery. In plain English, 'any and all' means any and all."), review denied, 199 Wn.2d 1014 (2022).  The plain meaning of "all" cannot be seen as excluding the rights and benefits that normally flow from employment such as a retirement account. Further, "free from any interest in the other" is expansive language.  If "any interest" is taken at its plain meaning, it must include the future right to take as beneficiary to the retirement account.  Unlike the insufficient waiver in the Lundy dissolution decree which only explicitly disavowed ownership interests, the far-reaching

---

[10] Br. of Resp't 15.

- 12 -

language of the Petelle CR 2A agreement necessarily includes the future interest to receive and retain SEP-IRA funds as a beneficiary. Accordingly, the CR 2A agreement refers to the accounts in a manner similar to the clauses that were provided as examples of adequate waivers by the court in Lundy. 187 Wn. App. at 960.

It is a reasonable conclusion, based on the signatures of the Petelles and their respective counsel as well as their efforts to conform the agreement to the requirements of CR 2A, that Michelle assented to the terms of the separation agreement with full awareness that it waived any claimed right to retain all of the funds contained in the retirement accounts acquired during the marriage. There is nothing in the record to suggest that she was unaware of the various accounts derived from the business she co-owned with Michael. She further agreed that "should either party die after the execution of this contract, the distribution of property and obligations agreed herein shall be and remain valid." The waiver in Lundy was deemed insufficient because it lacked the sweeping, inclusive language that is present here. Thus, we affirm the trial court's declaratory judgment and partial revision of the commissioner's order.

III.     Attorney Fees

Both parties request fees under RCW 11.96A.150. Further, Michelle cites RAP 18.1 to request an award of fees, expenses, and costs on appeal, but because Michelle does not prevail, any such award to her would be improper. The CR 2A agreement contains a section entitled enforcement, which includes an attorney fee provision. That provision reads:

No. 82526-7-I

> Attorney Fees.  If either party defaults in the performance of any of the terms, provisions or obligations of this agreement, and it becomes necessary to institute legal proceedings to effectuate the performance of any such terms, provisions or obligations, then the party found to be in default shall pay all expenses, including reasonable attorney fees, incurred in connection with such enforcement proceedings.

The use of "shall" in the CR 2A agreement removes the court's discretion with regard to a fee award based on enforcement proceedings.  Accordingly, upon compliance with the procedures outlined in RAP 18.1, the estate is entitled to attorney fees under the plain terms of the separation agreement.[11]

WE CONCUR:

---

[11] Due to the nondiscretionary language in the CR 2A agreement, the trial court erred in failing to award fees to the estate, both in the original order by the commissioner and the reviewing judge's denial of revision as to that aspect of the earlier ruling.  However, Gloria did not cross-appeal to assign error to this ruling, therefore the issue is waived.

- 14 -